UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DANIEL AND NATALIE DIEDRICH**
W2777 Crosstown Road
Hilbert, WI 54129-0000
       Plaintiffs,

Case No.: 17CV1104

v.

**OCWEN LOAN SERVICING, LLC**
P.O. Box 24737
West Palm Beach, FL 33416-4737
       Defendant.

## COMPLAINT

**NOW COME** the Plaintiffs, Daniel and Natalie Diedrich, by and through their attorneys Lawton & Cates, S.C. and Attorney Briane F. Pagel and allege:

### Parties

1. Daniel and Natalie Diedrich ("The Diedrichs") are residents of Wisconsin, residing at W2777 Crosstown Road, Hilbert, WI 54129-0000.

2. The Defendant, Ocwen Loan Servicing ("Ocwen"), is a Florida-based company whose primary place of business is in Florida and who has significant business contacts in Wisconsin.

### Jurisdiction and Venue

3. This court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and 1332 because the court has original jurisdiction over the Diedrichs' 12 U.S.C. § 2605 claim and because the parties have complete diversity of citizenship.

4. Venue in the Eastern District of Wisconsin is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the events giving rise to this action took place in the Eastern District of Wisconsin.

1

## Common Allegations

5.  Prior to and in June 2016, defendant Ocwen was servicing the Diedrichs' home mortgage loan.

6.  The Diedrichs became concerned about their home mortgage, and had questions about the mortgage.

7.  The Diedrichs were at the time engaged in litigation with Ocwen regarding Ocwen's servicing of their mortgage loan at and following the resolution of a foreclosure case. Despite that litigation, the Diedrichs were unable to get Ocwen to answer their new questions.

8.  The Diedrichs put their concerns in writing in a letter to Ocwen, and signed and mailed that letter June 1, 2016.

9.  A true and correct copy of the Diedrichs' June 1 2016 letter accompanies this complaint as **Exhibit A.**

10. Ocwen has never responded in any way to Exhibit A.

11. This is the second time Ocwen has failed to appropriately respond to a qualified written request. Upon information and belief Ocwen has a pattern and practice of failing to response to qualified written requests which will be demonstrated through discovery in this matter.

12. In particular among the questions the Diedrichs had was the adjustment of their payment in 2016, as set forth in Exhibit A.

13. Ocwen increased the interest rate a month early, and reset the payment too high, resulting in the Diedrichs paying nearly $300 more per month in principal and interest than they were supposed to under the loan.

14. The Diedrichs, without the answers to their questions, have been unable to determine why Ocwen reset the loan as it did. They are thus unable to determine whether their payments are correct and are fearful that Ocwen will continue to reset the payments.

# First Cause of Action:
# Violations of Wis. Stats. §§ 138.052(7) and (7s)(a)

25. The plaintiffs reallege and incorporate by reference all previous allegations.

26. Ocwen is a person who receives loan and escrow payments from the Diedrichs on behalf of itself and another.

27. The Diedrichs are Ocwen's borrowers.

31. In or about June 2016, Ocwen received the Diedrichs' written borrower inquiry concerning their account as set forth on Exhibit A.

32. Ocwen did not respond to this inquiry.

34. As a direct result of the pattern of errors and negligence that culminated in Ocwen's failure to provide a timely answer to the Diedrichs' borrower inquiry, the Diedrichs have suffered damage. This damage includes but is not limited to incurring attorney's fees in the approximate amount of $400 to assist in drafting a qualified written request; in incurring postage to send a copy of the letter, and including pecuniary losses of $265.93 per month from June 1, 2016 forward; this amount is the amount of increased principal and interest Ocwen is demanding. The Diedrichs were unable to ascertain if the increase in payments was in error because Ocwen refused and failed to answer their June 1, 2016 letter, and because they could not be sure if the increase in payments was an error, the Diedrichs had to make the higher payment while awaiting an answer. If Ocwen had answered the error and explained why the payment had increased, the Diedrichs could have determined whether the explanation was correct or not, and if incorrect, the Diedrichs could have legally refused to make the extra payment without fear of foreclosure.

35.     In addition, the Diedrichs have suffered actual and substantial emotional distress and mental stress and suffering from Ocwen's failure to answer. Because Ocwen did not answer their letter, the Diedrichs were unsure how long the increased payment might be required of them, and were unsure whether Ocwen was competently administering the loan. They could not understand how Ocwen had determined the interest rate should be increased on June 1, rather than July 1, let alone determine why Ocwen appeared to be breaching their loan agreement. This caused them to

worry that they had misunderstood the agreement and that there were other things they did not understand about the agreement, and thus fear they might lose their house or incur additional penalties or costs because they had not properly understood the agreement. For as long as Ocwen went on not answering (and goes on not answering) the Diedrichs have feared and will have to fear that Ocwen either will continue breaching the agreement, or that they misunderstood the agreement. Since the Diedrichs entered into the agreement with Ocwen specifically to avoid such uncertainties, Ocwen's refusal and failure to answer their written requests has and continues to cause the Diedrichs fear and distress because they do not understand how Ocwen is interpreting their loan and cannot obtain an explanation of that interpretation.

35. The plaintiffs are entitled by statute to recover their actual damages, including reimbursement of litigation costs and attorney's fees, reimbursement of overpayments due to accounting and interest rate errors plus interest from the date of the payment, and the statutory penalty of $500 under state law.

## Second Cause of Action:
## Violations of RESPA, 12 U.S.C. §§ 2605(e)(1) and (2)

36. The plaintiffs reallege and incorporate by reference all previous allegations.

37. Ocwen is the servicer of the Diedrichs' federally related mortgage loan.

31. In or about June 2016, Ocwen received the Diedrichs' written borrower inquiry concerning their account as set forth on Exhibit A.

32. Ocwen did not respond to this inquiry.

34. As a direct result of the pattern of errors and negligence that culminated in Ocwen's failure to provide a timely answer to the Diedrichs' borrower inquiry, the Diedrichs have suffered damage. This damage includes but is not limited to incurring attorney's fees in the approximate amount of $400 to assist in drafting a qualified written request; in incurring postage to send a copy of the letter, and including pecuniary losses of $265.93 per month from June 1, 2016 forward; this amount is the amount of increased principal and interest Ocwen is demanding. The Diedrichs were unable to ascertain if the increase in payments was in error because Ocwen refused and

4

failed to answer their June 1, 2016 letter, and because they could not be sure if the increase in payments was an error, the Diedrichs had to make the higher payment while awaiting an answer. If Ocwen had answered the error and explained why the payment had increased, the Diedrichs could have determined whether the explanation was correct or not, and if incorrect, the Diedrichs could have legally refused to make the extra payment without fear of foreclosure.

35. In addition, the Diedrichs have suffered actual and substantial emotional distress and mental stress and suffering from Ocwen's failure to answer. Because Ocwen did not answer their letter, the Diedrichs were unsure how long the increased payment might be required of them, and were unsure whether Ocwen was competently administering the loan. They could not understand how Ocwen had determined the interest rate should be increased on June 1, rather than July 1, let alone determine why Ocwen appeared to be breaching their loan agreement. This caused them to worry that they had misunderstood the agreement and that there were other things they did not understand about the agreement, and thus fear they might lose their house or incur additional penalties or costs because they had not properly understood the agreement. For as long as Ocwen went on not answering (and goes on not answering) the Diedrichs have feared and will have to fear that Ocwen either will continue breaching the agreement, or that they misunderstood the agreement. Since the Diedrichs entered into the agreement with Ocwen specifically to avoid such uncertainties, Ocwen's refusal and failure to answer their written requests has and continues to cause the Diedrichs fear and distress because they do not understand how Ocwen is interpreting their loan and cannot obtain an explanation of that interpretation.

35. The plaintiffs are entitled by statute to recover their actual damages, including reimbursement of litigation costs and attorney's fees, reimbursement of overpayments due to accounting and interest rate errors plus interest from the date of the payment, and the statutory penalty of $500 under state law.

47. Because Ocwen has made a pattern or practice of violating the provisions of 12 U.S.C. § 2605(e), the Diedrichs are entitled to the statutory award of $2,000.

48. The Diedrichs are further entitled to reimbursement for their legal costs in bringing this action, including reasonable attorney's fees.

## Third Cause of Action:
## Violations of Wis. Stats. §§ 224.77(1)(k), (L) and(m)

49. The plaintiffs reallege and incorporate by reference all previous allegations.

50. As the servicer of the Diedrichs' mortgage, Ocwen is a mortgage banker to which Ch. 224, Wis. Stats., applies.

51. Ocwen incurred liability under Wis. Stat. § 224.77(1)(k) by violating Wis. Stats. §§ 138.052(7) and (7s), by violating 12 U.S.C. § 2605(e), in that Ocwen violated state and federal laws substantially related to housing.

52. Further, Ocwen incurred liability by dishonestly, fraudulently, and improperly increasing the interest rate a month early and by increasing the actual monthly principal and interest required payments above what was allowed under the loan agreement, rather than capitalizing those additional amounts as part of the final balloon payment, in violation of 224.77(1)(m), Wis. Stats.

53. The Diedrichs are aggrieved as a direct result of the pattern of errors, intentional violations, and negligence alleged herein. This damage includes but is not limited to incurring attorney's fees in the approximate amount of $400 to assist in drafting a qualified written request; in incurring postage to send a copy of the letter, and including pecuniary losses of $265.93 per month from June 1 2016 forward; this amount is the amount of increased principal and interest Ocwen is demanding. The Diedrichs were unable to ascertain if the increase in payments was in error because Ocwen refused and failed to answer their June 1, 2016 letter, and because they could not be sure if the increase in payments was an error, the Diedrichs had to make the higher payment while awaiting an answer. If Ocwen had answered the error and explained why the payment had increased, the Diedrichs could have determined whether the explanation was correct or not, and if incorrect, the Diedrichs could have legally refused to make the extra payment without fear of foreclosure.

35. In addition, the Diedrichs have suffered actual and substantial emotional distress and mental stress and suffering from Ocwen's failure to answer. Because Ocwen did not answer their letter, the Diedrichs were unsure how long the increased payment might be required of them, and

6

were unsure whether Ocwen was competently administering the loan. They could not understand how Ocwen had determined the interest rate should be increased on June 1, rather than July 1, let alone determine why Ocwen appeared to be breaching their loan agreement. This caused them to worry that they had misunderstood the agreement and that there were other things they did not understand about the agreement, and thus fear they might lose their house or incur additional penalties or costs because they had not properly understood the agreement. For as long as Ocwen went on not answering (and goes on not answering) the Diedrichs have feared and will have to fear that Ocwen either will continue breaching the agreement, or that they misunderstood the agreement. Since the Diedrichs entered into the agreement with Ocwen specifically to avoid such uncertainties, Ocwen's refusal and failure to answer their written requests has and continues to cause the Diedrichs fear and distress because they do not understand how Ocwen is interpreting their loan and cannot obtain an explanation of that interpretation.

**WHEREFORE, the plaintiffs are entitled to the following relief:**

1. Statutory penalties for violating Wis. Stat. § 138.052 equal to $500 and the costs for bringing this action, including reasonable attorney's fees.

2. Actual damages for violating Wis. Stat. § 138.052, including reimbursement of overpayments rates plus interest from the date that the payment was made.

3. Statutory penalties for a pattern or practice of violating 12 U.S.C. § 2605 equal to $2,000.

4. Costs for bringing this action as well as attorney fees.

5. Statutory penalties for violating Wis. Stat. § 224.77 equal to the greater of the value of their actual damages or twice the loan origination fee up to $25,000.

6. An award of compensatory damages for their pecuniary losses, emotional and mental distress, and other losses and damages.

7. Any other relief that this Court finds just and equitable.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY.**

**Dated this 9th day of August, 2017.**          **Lawton & Cates, S.C.**

*/s/ Briane F. Pagel*  _____
Briane F. Pagel, Jr.
State Bar No: 1025514

P.O. Address:
345 W. Washington Ave., #201
Madison, WI 53703
P: 608.282.6200
F: 608.282.6252
bpagel@lawtoncates.com