**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

DANIEL AND NATALIE DIEDRICH,

Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,

Defendant.

Case No. 17-cv-1104

Hon. Magistrate William E. Duffin

**OCWEN LOAN SERVICING LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Jena M. Valdetero
Robert W. Brunner
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000
*Attorneys for Ocwen Loan Servicing, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW ................................................................................... 2

PROCEDURAL HISTORY .................................................................................. 3

ARGUMENT ....................................................................................................... 3

    I.    Ocwen is Entitled to Summary Judgment on the RESPA Claims in
    Count II. ................................................................................................ 3

        A.    RESPA Only Requires Loan Servicers to Respond to Inquiries
        Regarding the "Servicing" of a Loan and Plaintiffs' Inquires
        Did Not Relate to the Servicing of their Loan. ................................ 3

        B.    Plaintiffs Have Provided No Evidence of any Pattern or
        Practice of Noncompliance with RESPA. ...................................... 6

        C.    Like *Diedrich I*, Plaintiffs Have Provided No Evidence of
        Actual Damages Resulting from any Violation of RESPA. ...................... 8

            1.    Plaintiffs Have No Evidence to Support their Claim for
            Emotional Distress Damages. ....................................... 11

            2.    Plaintiffs Cannot Recover Their Attorney's Fees
            Regarding Filing Suit or Preparing the QWR. ........................... 13

            3.    Plaintiffs' Claims Regarding the Change in Monthly
            Payment and Alleged "Pecuniary Losses" Under
            RESPA are Barred by Claim Preclusion. ................................ 14

    II.    Summary Judgment Should Be Granted in Ocwen's Favor on the
    State Law Claims in Counts I and III. ...................................................... 17

        A.    Summary Judgment is Proper on Count I Because Plaintiffs
        Do Not Allege an Impermissible Interest Rate Was Applied to
        their Loan. ................................................................... 17

        B.    Summary Judgment is Proper on Count III Because Plaintiffs
        Have Failed to Provide Any Evidence of Damages
        Recoverable Under RESPA. ............................................. 18

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Columbia Propane, L.P. v. Wisconsin Gas Co.,*
2003 WI 38, 261 Wis. 2d 70 .......................................................16

*DePratt v. West Bend Mut. Ins. Co.,*
113 Wis.2d 306 (1983) ...............................................................14

*Diedrich v. Ocwen Loan Servicing, LLC,*
839 F.3d 583 (7th Cir. 2016) ............................................ *passim*

*Diedrich v. Ocwen Loan Servicing, LLC,*
No. 13-CV-693, 2015 WL 1885630 (E.D. Wis. Apr. 24, 2015),
*aff'd*, 839 F.3d 583 (7th Cir. 2016) ................................... *passim*

*Durkin v. Equifax Check Services, Inc.,*
406 F.3d 410 (7th Cir.2005) ...........................................................2

*Giordano v. MGC Mortg., Inc,*
160 F. Supp. 3d 778 (D.N.J. 2016) .................................................6

*Gunville v. Walker,*
583 F.3d 979 (7th Cir. 2009) ..........................................................2

*Johnson v. Cambridge Indus., Inc.,*
325 F.3d 892 (7th Cir. 2003) .....................................................2, 12

*Lal v. Am. Home Servicing, Inc.,*
680 F. Supp. 2d 1218 (E.D. Cal. 2010)........................................13

*Lindell v. Pollard,*
681 F. App'x 518 (7th Cir.), *cert. denied*, 138 S. Ct. 258 (2017) ............................................2

*Lorang v. Ditech Fin. LLC,*
No. 16-CV-425-JDP, 2017 WL 3891802 (W.D. Wis. Sept. 5, 2017),
*reconsideration denied*, 2017 WL 4570797 (W.D. Wis. Oct. 13, 2017).....................10, 11, 13

*In re Maxwell,*
281 B.R. 101 (Bankr. D. Mass. 2002) ............................................7

*McDaniel v. Progress Rail Locomotive, Inc.,*
940 F.3d 360 (7th Cir. 2019) ..........................................................2

Case 2:17-cv-01104-WED   Filed 12/16/19   Page 3 of 24   Document 46

*McLean v. GMAC Mortg. Corp.*,
   595 F. Supp. 2d 1360 (S.D. Fla. 2009),
   *aff'd*, 398 F. App'x 467 (11th Cir. 2010)................................................................................7

*Moore v. Wells Fargo Home Mortg.*,
   No. 16-CV-656-WMC, 2018 WL 922370 (W.D. Wis. Feb. 15, 2018),
   *aff'd sub nom. Moore v. Wells Fargo Bank, N.A.*,
   908 F.3d 1050 (7th Cir. 2018) ..............................................................9, 10, 11, 13

*Mrozek v. Intra Fin. Corp.*,
   2005 WI 73, 281 Wis.2d 448 ..............................................................................14

*Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*,
   845 F.3d 852 (7th Cir. 2017) ..............................................................................4, 7

*Pugh v. City of Attica*,
   259 F.3d 619 (7th Cir. 2001) ..............................................................................2, 13

*Renfroe v. Nationstar Mortg., LLC*,
   822 F.3d 1241 (11th Cir. 2016) ..............................................................................6

*Schacht v. Wis. Dep't of Corr.*,
   175 F.3d 497 (7th Cir. 1999) ..............................................................................2

*Sutton v. CitiMortgage, Inc.*,
   228 F. Supp. 3d 254 (S.D.N.Y. 2017)......................................................................6

*Wirtz v. Specialized Loan Servicing, LLC*,
   886 F.3d 713 (8th Cir. 2018), *reh'g denied* (May 29, 2018)..............................................6, 7

*Wisconsin Pub. Serv. Corp. v. Arby Const., Inc.*,
   2011 WI App 65, 333 Wis. 2d 184, *aff'd*, 2012 WI 87, 342 Wis. 2d 544 ..............................14

**Statutes**

12 U.S.C.A. § 2605(i)(3) ..............................................................................4, 5

12 U.S.C.A. § 2605(e)(2)..............................................................................8, 9, 17

12 U.S.C.A. § 2605(f)(1) ..............................................................................8

12 U.S.C.A. § 2605(f)(1)(B)..............................................................................6

12 U.S.C. § 138.052(7s)(a)..............................................................................16

12 U.S.C. § 2605 ..............................................................................8, 17

12 U.S.C. § 2605(e) ..............................................................................3, 4, 6, 7

Case 2:17-cv-01104-WED   Filed 12/16/19   Page 4 of 24   Document 46

12 U.S.C. § 2605(e)(1) .................................................................................1, 7

12 U.S.C. § 2605(e)(2) ....................................................................................7

12 U.S.C. § 2605(e)(2)(C) ..............................................................................8

12 U.S.C. § 2609 ............................................................................................4

Wis. Stat. Ann. § 138.05(7s)(a) ....................................................................17

Wis. Stat. Ann. § 224.77(1)(k)–(m) .............................................................17

Wis. Stat. § 138.052(7) .....................................................................1, 16, 17

Wis. Stat. § 138.052(7s)(a) ...............................................................1, 16, 17

Wis. Stat. § 224.77 ...................................................................................1, 18

Wis. Stat. § 224.77(1) ..................................................................................17

Wis. Stat. § 224.77(1)(k) ..............................................................................17

Wis. Stat. § 224.77(1)(l) ...............................................................................17

Wis. Stat. § 224.77(1)(m) .............................................................................17

Wis. Stat. § 244.71 .......................................................................................10

**Rules**

Fed.R.Civ.P. 56(a) ..........................................................................................2

Case 2:17-cv-01104-WED   Filed 12/16/19   Page 5 of 24   Document 46

# INTRODUCTION

This is the second lawsuit filed against Ocwen in this Court by Plaintiffs Daniel and Natalie Diedrich ("Plaintiffs") relating to alleged violations of RESPA and two Wisconsin statutes based on a 2011 loan modification agreement ("LMA") and requests for information regarding that LMA. The court in the first case ("*Diedrich I*") entered summary judgment in Ocwen's favor based on Plaintiffs' failure to provide any evidence of damages during discovery as a result of the alleged RESPA or state law violations. Plaintiffs appealed to the Seventh Circuit, which affirmed the judgment based on their failure to present evidence of any damages. Clearly not pleased with that result after four years of litigation, Plaintiffs filed this second lawsuit asserting nearly identical causes of action against Ocwen relating to a new request for information regarding the same LMA. Yet again, and somewhat remarkably, Plaintiffs have failed to present any evidence during discovery in this case that Ocwen engaged in any pattern or practice of not complying with RESPA, or that they suffered any damages resulting from any alleged RESPA violation.

Ocwen is entitled to summary judgment based on the following: (1) Plaintiffs have provided no evidence of any pattern or practice of noncompliance with Section 2605(e)(1) of RESPA entitling them to statutory damages; (2) they have provided no evidence of any actual damages resulting from any alleged RESPA violation; (3) no impermissible interest rate was applied to their loan entitling them to relief under Wis. Stat. §§ 138.052(7) and (7s)(a); and (4) they fail to state a claim under Wis. Stat. § 224.77. Moreover, Plaintiffs' claims relating to any alleged wrongful increase in their monthly loan payment under the LMA are barred by claim preclusion because those claims could have been litigated and resolved in *Diedrich I*. Summary judgment should be granted in Ocwen's favor and this case dismissed with prejudice.

## **STANDARD OF REVIEW**

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019); *Diedrich v. Ocwen Loan Servicing, LLC*, No. 13-CV-693, 2015 WL 1885630, at *1 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d 583 (7th Cir. 2016); Fed.R.Civ.P. 56(a). In evaluating a motion for summary judgment, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in that party's favor." *McDaniel*, 940 F.3d at 367. Evidence relied upon must be of a type that would be admissible at trial. *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009). "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.' " *Durkin v. Equifax Check Services, Inc.,* 406 F.3d 410, 414 (7th Cir.2005).

"[S]ummary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.' " *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). "What matters at summary judgment is *evidence*." *Lindell v. Pollard*, 681 F. App'x 518, 520 (7th Cir.), *cert. denied*, 138 S. Ct. 258 (2017), citing *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (emphasis in original). A mere "scintilla of evidence" is not enough to survive summary judgment. *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001).

**PROCEDURAL HISTORY**

Plaintiffs filed their first lawsuit against Ocwen on June 18, 2013 ("*Diedrich I*"). (SOF ¶ 54.)[1] Like the case here, *Diedrich I* alleged that Ocwen failed to respond to an alleged qualified written request ("QWR") (which Ocwen denied), and asserted the same causes of action Plaintiffs allege in this case. (SOF ¶ 43.) On April 24, 2015, the court in *Diedrich I* (Magistrate Judge Nancy Joseph presiding) granted summary judgment in Ocwen's favor and dismissed the case. (SOF ¶ 56.) Plaintiffs filed a motion for reconsideration, which was denied on July 8, 2015. (SOF ¶ 57.) Plaintiffs filed an appeal with the Seventh Circuit Court of Appeals on July 24, 2015, which affirmed the judgment on October 6, 2016. (SOF ¶ 59.) While the appeal was pending, Plaintiffs sent a new letter regarding the LMA to Ocwen, and filed this new lawsuit against Ocwen on August 9, 2017. (SOF ¶ 60.)

**ARGUMENT**

I.     **Ocwen is Entitled to Summary Judgment on the RESPA Claims in Count II.**

     A.     **RESPA Only Requires Loan Servicers to Respond to Inquiries Regarding the "Servicing" of a Loan and Plaintiffs' Inquires Did Not Relate to the "Servicing" of their Loan.**

As a threshold issue, Plaintiff's RESPA claims fail because their purported qualified written request ("QWR") does not relate to the "servicing" of a loan as that term is defined by the statute. Instead, the purported QWR included grievances about the terms of the LMA that they agreed to five years earlier, and whether the terms would change in the future. (ECF 1, Ex. A.) RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans. *Diedrich v. Ocwen Loan Servicing, LLC*, No. 13-CV-693, 2015 WL 1885630, at *5 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d 583 (7th Cir. 2016). The statute

---

[1] Ocwen's Statement of Proposed Material Facts, filed concurrently with this brief, shall be referred to herein as "SOF."

3

imposes a number of duties on loan servicers, including a duty to respond to a borrower's written requests for information. 12 U.S.C. § 2605(e).

The Seventh Circuit has held that the statutory duty to respond to requests for information from borrowers "does not arise with respect to all inquiries or complaints from borrowers to servicers." *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017). Rather, the statute "covers only written requests alleging an account error or seeking information relating to loan servicing." *Id.* Section 2605(e) of RESPA defines "Servicing" as:

> . . . receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C.A. § 2605(i)(3).

The Seventh Circuit noted that a QWR "can't be used to collect information about, or allege an error in, the underlying mortgage loan." *Perron*, 845 F.3d at 857. While their appeal to the Seventh Circuit was pending, Plaintiffs sent a June 1, 2016 letter to Ocwen (the "Letter") which included inquires pertaining to the LMA. (SOF ¶ 13.)  In essence, the Letter complained about the terms of the LMA that they signed five years earlier in order to resolve a foreclosure action filed against them. (ECF  1, Ex. A.) Plaintiffs provided Ocwen a number of their personal opinions and calculations regarding the LMA, and went so far as to ask Ocwen what could happen in the future.  Some examples from the Letter include:

> So, as of July 1, 2016, the principal should be $189,479.21 ($207,456.98 - $17,977.77.)  If the new interest rate of 4.5% was applied to that amount and amortized over the remainder of the loan the principal and interest payment would be $1,163.62, not $906.91.
>
> . . .

4

The modification agreement does not say that the payment would ever increase. Even if the payment were to increase, the same percentage reduction should have applied to any new payments. The first modified payments were 24.8% below what a standard amortization would call for ($212.53 is 24.8% of $853.26), so after the interest rate hike, the highest the payment should have been is 24.8% below a standard payment; if the standard payment would be $875.04 ($1,163.62 x 0.752). Again, this is lower than $906.81.

. . .

This has left us not understanding how our payments have been applied, how Ocwen interpreted the loan modification, how new payments were calculated, why June 1 was set as the date on which the interest increased, why July 1 was the new payment date, what our actual balance owed is, and what we can expect in the future. . . .

(SOF ¶ 43) (Feezer Affidavit, Ex. 6.)

Moreover, Plaintiffs requested "a description of how the initial payment of principal and interest [under the LMA] was arrived at, including any formulas applied to determine that amount," and a "statement of whether Ocwen believes the interest rate on the loan can exceed 4.5%, and if the answer is affirmative, then a statement of any and all reasons for believing that the interest rate can exceed 4.5% on this loan at any time, including but not limited to provision [sic] of any documents which in Ocwen's opinion supports that belief . . ." (ECF 1, Ex. A.)

These inquires (or personal opinions and calculations) do not seek information relating to Ocwen's "servicing" of the Loan as defined by RESPA, *i.e.*, receiving scheduled periodic payments from a borrower pursuant to the terms of a loan, including amounts for escrow accounts, and making the payments of principal and interest and such other payments with respect to the amounts received from a borrower as may be required pursuant to the terms of the loan. 12 U.S.C.A. § 2605(i)(3). Instead, Plaintiffs appeared to be challenging the terms of the LMA that they signed, which they were clearly not happy with five years later. Moreover,

Plaintiffs asked for "formulas" allegedly used to determine the amount of principal and interest when they signed the LMA (which does not involve "servicing" the loan); whether Ocwen has any "opinions" on whether the 4.5% interest rate would increase (even when the LMA makes clear that the 4.5% interest rate was fixed);[2] and the amount of a balloon payment that would not become due until 2037. These inquires (better labeled as grievances about the LMA that they signed in 2011) do not constitute a "qualified written request" under RESPA.

Even if the Letter is determined to be a QWR, Plaintiffs' RESPA claims still fail as a matter of law because they have failed to put forth any evidence during discovery that they have suffered any damages as a result of the alleged RESPA violation.

### B. Plaintiffs Have Provided No Evidence of any Pattern or Practice of Noncompliance with RESPA.

Section 2605(f)(1)(B) of RESPA provides that individuals may recover statutory damages of $2,000 "in the case of a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C.A. § 2605(f)(1)(B). Plaintiffs allege that "[u]pon information and belief Ocwen has a pattern or practice of failing to response to qualified written requests which will be demonstrated through discovery in this matter." (ECF 1, ¶¶ 11, 47.) Allegations based "upon information and belief" that a defendant has a pattern or practice of not complying with Section 2605(e) are insufficient as a matter of law to show a pattern or practice. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 276 (S.D.N.Y. 2017); *Giordano v. MGC Mortg., Inc*, 160 F. Supp. 3d 778, 785 (D.N.J. 2016). Here, Plaintiffs base their pattern or practice claim "upon information and belief," which is insufficient as a matter of law to show a pattern or practice. *Id.* Summary judgment in Ocwen's favor is proper on that basis alone.

---

[2] The LMA clearly provides that the 4.5% rate is fixed: "At the end of the [Trial Period] your rate will be 4.5% *and will remain fixed until the maturity of your loan*." (Feezer Affidavit, Ex. 3) (emphasis added).

6

Moreover, to show a pattern or practice, a plaintiff must show that noncompliance with the statute "was the company's standard operating procedure—the regular rather than the unusual practice." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720 (8th Cir. 2018), *reh'g denied* (May 29, 2018), citing *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016). The Seventh Circuit in *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017), held that the plaintiffs failed to produce evidence showing a pattern or practice of RESPA noncompliance and therefore had no viable claim for statutory damages. The court noted that the "best they [could] muster is a pair of district-court cases holding Chase liable for RESPA violations," and "[t]wo examples of similar behavior—in different states, separated by a handful of years, and with no evidence of coordination—isn't enough to support recovery of statutory damages." *Perron*, 845 F.3d at 857; *see also McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010) (two violations of Section 2605(e) insufficient to support a pattern or practice of noncompliance); *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (same).

Here, Plaintiffs have no evidence that it was Ocwen's "standard operating procedure" to not comply with Section 2605(e). *Wirtz*, 886 F.3d at 720. Plaintiffs issued no written discovery to Ocwen, and discovery has long closed. Even if Plaintiffs could establish there were two violations of Section 2605(e), that is insufficient to support a finding of pattern or practice. *McLean*, 595 F. Supp. 2d at 1365; *In re Maxwell*, 281 B.R. at 123. Because Plaintiffs have no pattern or practice evidence to present at trial, summary judgment should be granted in Ocwen's favor regarding Plaintiffs' request for statutory damages under RESPA.

7

**C.** **Like *Diedrich I*, Plaintiffs Have Provided No Evidence of Actual Damages Resulting from any Violation of RESPA.**

Plaintiffs allege that Ocwen violated Sections 2605(e)(1) and (2) of RESPA by allegedly not providing "a timely answer to [their] inquiry . . ." included in the QWR. (Compl. ¶ 35.) Plaintiffs claim they "were unable to ascertain if the increase in payments was in error because Ocwen refused and failed to answer their June 1, 2016 letter, and because they could not be sure if the increase in payments was an error, the Diedrichs had to make the higher payment while awaiting an answer." *Id*.

Section 2605 provides that an individual may recover "actual damages" as a result of a failure to comply with a provision of Section 2605 (including responding to QWRs). 12 U.S.C.A. § 2605(f)(1). A claim brought under Section 2605(e)(2) fails, however, if a plaintiff "does not put forth any competent evidence of damages." *Diedrich*, 2015 WL 1885630, at *9. Although the court in *Diedrich I* found that Ocwen violated RESPA by failing to send a sufficient response to a QWR, the court still entered summary judgment in Ocwen's favor because Plaintiffs did not "put forth any competent evidence of damages." *Id*.

In *Diedrich I*, Plaintiffs entered into the 2011 LMA and a pending foreclosure action filed against them in 2010 was dismissed. On February 25, 2013, Plaintiff sent a QWR to Ocwen which requested eight types of information about their account. Ocwen timely sent an acknowledgment letter on March 7, 2013, and on March 30, 2013, sent a letter to Plaintiffs stating that it needed another 15 days to review their inquiry. On April 22, 2013, Ocwen sent a letter to Plaintiffs stating that it could not identify a problem with their account, and indicated that Plaintiffs should send another letter identifying which month and reporting was being disputed, the explanations for the dispute, and all evidence showing that the payment for that month was received on time or that the information they reported was incorrect. Plaintiffs

8

argued that Ocwen violated Section 2605(e)(2) of RESPA by failing to respond to their inquiries regarding their loan modification. The court held that Ocwen's response to the QWR "was insufficient under § 2605(e)(2)(C) because it was unresponsive to any of the Diedrichs' clear requests for information and failed to give a sufficient reason as to why the information requested was unavailable or could not be obtained." *Diedrich*, 2015 WL 1885630, at \*9. Despite that violation, the court granted Ocwen's motion for summary judgment because Plaintiffs failed to put forth any evidence of damages. *Id.*.

For example, the court found that Plaintiffs "failed to provide evidence constituting a detailed explanation of their emotional distress." *Diedrich*, 2015 WL 1885630, at \*9. Natalie Diedrich's testimony regarding her alleged emotional distress was determined by the court to be vague and conclusory. *Id*. She testified that the basis of her emotional distress was "everything that Ocwen has put us through over the three years of this lawsuit ... like I said, the stress and the having to constantly worry about this monthly, and to have an attorney continuously for every day of my life." *Id*. Mr. Diedrich's testimony in *Diedrich I* was also deemed to be conclusory as he simply testified that Ocwen's actions caused him stress, including stress on his relationship with his wife. *Id*. The court held that the testimony "they experienced 'stress' and 'worry' based on 'everything' Ocwen has done is conclusory and vague." *Id*.

Plaintiffs appealed the granting of summary judgment in Ocwen's favor to the Seventh Circuit, which affirmed the ruling. *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016). The Seventh Circuit held that the "district court did not err in determining that, even accepting the Diedrichs' claim that they suffered damages, they failed to put forth evidence sufficient to establish every element that is essential to their claim and for which they would bear

9

the burden of proof at trial," including that they were injured "specifically by Ocwen's inadequate response to a request for information under RESPA." *Diedrich*, 839 F.3d at 593.

Other Wisconsin federal courts have granted summary judgment in favor of loan servicers on RESPA claims based on the rulings in *Diedrich I*. For example, in *Moore v. Wells Fargo Home Mortg.*, No. 16-CV-656-WMC, 2018 WL 922370, at *1 (W.D. Wis. Feb. 15, 2018), *aff'd sub nom. Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050 (7th Cir. 2018), the plaintiffs asserted claims against Wells Fargo Home Mortgage ("Wells Fargo"), the servicer of their home loan, for violations of RESPA and Wis. Stat. § 244.71 (the same causes of action in the case here) based on its alleged failure to provide a sufficient response to a QWR. The court found no violation of RESPA, but noted that "[e]ven if plaintiffs had advanced enough evidence for a reasonable trier of fact to find a violation of RESPA or Wisconsin state law . . . it is also plaintiffs' burden to come forward with evidence sufficient to support an award of actual damages to pursue their RESPA claim." *Moore*, 2018 WL 922370, at *8. Citing to the Seventh Circuit ruling in *Diedrich I*, the court found that plaintiffs failed to demonstrate that their alleged injuries were caused by any RESPA violation, and granted summary judgment in Wells Fargo's favor. *Moore*, 2018 WL 922370, at *9.

In *Lorang v. Ditech Fin. LLC*, No. 16-CV-425-JDP, 2017 WL 3891802 (W.D. Wis. Sept. 5, 2017), *reconsideration denied*, 2017 WL 4570797 (W.D. Wis. Oct. 13, 2017), the plaintiffs filed suit against Ditech Financial LLC ("Ditech") based on Ditech's alleged failure to respond to two QWRs, and alleged violations of RESPA's Regulation X relating to the denial of a loan modification application. The court found that Ditech was not obligated to respond to either QWR because they were not sent to the proper address. *Lorang*, 2017 WL 3891802, at *5. With regard to the Regulation X claim, the court held that even if the plaintiffs could show a violation

10

of the regulation, they failed to submit adequate evidence of injury to survive a motion for summary judgment. *Lorang*, 2017 WL 3891802, at *5. Citing *Diedrich I*, the court held that the plaintiffs needed to present evidence "not just that Ditech failed to evaluate their complete application, but specifically, that [Ditech's] failure to comply with [the Regulation] caused their injury," which the plaintiffs failed to do. *Id*. The court granted summary judgment in Ditech's favor on the RESPA claim. *Lorang*, 2017 WL 3891802, at *6.

Should the Court find a violation of RESPA here, summary judgment should still be granted in Ocwen's favor on the RESPA claims based on the decisions in *Diedrich I*, *Moore* and *Lorang* because Plaintiffs have no evidence of actual damages resulting from any RESPA violation.

### 1. Plaintiffs Have No Evidence to Support their Claim for Emotional Distress Damages.

A party seeking emotional distress damages "must provide the court with a reasonably detailed explanation of the injuries suffered. Conclusory statements of stress are not sufficient." *Diedrich*, 2015 WL 1885630, at *8. Just like *Diedrich I*, Plaintiff have provided no "reasonably detailed explanation" of their alleged $50,000 in emotional distress damages they seek in this case. Far from it, the record is devoid of any evidence supporting their claim.

At his deposition in this case, Mr. Diedrich testified that he did not know how he calculated the $50,000 in emotional distress damages other than "I know that it's just a burden on our lives every – every month not knowing where we're going with this thing. So, I mean, I don't recall how we came up with the [$50,000] . . ." (Ex. C, Daniel Depo., p. 28.) With regard to the burden on his life, Mr. Diedrich testified that "we're paying 260 something dollars more a month than what we're supposed to be and we don't know why. That's one. I always have to have a lawyer every time something changes on our – you know, I always have to call a lawyer,

so there is fees and – I mean, just the stress involved with that. It would be nice to know what's going on." (Ex. C, Daniel Depo., p. 28.)

Mr. Diedrich also testified that he has never been treated by his treating physician for his alleged emotional distress, does not take any medication for any kind of emotional distress resulting from the claims in this case, and has never seen a psychologist or psychiatrist with regard to the alleged emotional distress that he is claiming in this case. (*Id.*) Like the testimony in *Diedrich I*, Mr. Diedrich's testimony in this case is vague and conclusory, and far from the "reasonably detailed explanation" that is required to take this case to trial. *Diedrich*, 2015 WL 1885630, at *8.

Natalie Diedrich's testimony fares no better as she also does not know how they determined they are entitled to $50,000 in emotional distress damages. At her deposition, Ms. Diedrich testified that "I guess I can't say exactly how I came up with that dollar amount, but taking into consideration all of the emotional distress that this has caused it's an amount that we found acceptable." (Ex. D, Natalie Depo., p. 20.) This is even more vague and conclusory than her husband's testimony. An "amount they found acceptable" is far from the "reasonably detailed explanation" that is required. *Diedrich*, 2015 WL 1885630, at *8.

Ms. Diedrich also testified that she suffers "horrible head pain, neck pain, and headaches" relating to the alleged emotional distress, is prescribed a muscle relaxant (cyclobenzaprine), but she is not seeking to recover the costs of the medication or the treatment she received for the headaches and pain. (Ex. D, Natalie Depo., pp. 21-22, 24-25.) When asked whether there are other things in her life that may be contributing to the headaches and pain, Ms. Diedrich testified that "I'm not a hundred percent sure of all of it." (Ex. D, Natalie Depo., p. 23.) Thus, she cannot rule out that other things in her life could be contributing to her alleged emotional distress. Ms.

12

Diedrich further testified that she has not seen any psychologist or psychiatrist for the emotional distress she is claiming in this case. (Ex. D, Natalie Depo., p. 24.)

More than two years after this lawsuit was filed, Plaintiffs have never produced any documents in discovery that support their claims for emotional distress. Plaintiffs have no documents relating to any medical or mental health treatment that they received as a result of Ocwen's alleged conduct; any medical expenses they incurred as a result of Ocwen's alleged conduct; or any costs incurred for treatment they received for their alleged emotional distress. (Ex. E, p. 7.)

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901. A mere "scintilla of evidence" is not enough to survive summary judgment. *Pugh*, 259 F.3d at 625 (7th Cir. 2001). Plaintiffs have provided nothing in discovery by way of deposition testimony or documentary evidence to support their request for emotional distress damages in this case. Even if they had a "scintilla of evidence" (which Ocwen asserts they don't), that is not enough to survive summary judgment. *Pugh*, 259 F.3d at 625. Accordingly, summary judgment is proper in Ocwen's favor.

### 2. Plaintiffs Cannot Recover Their Attorney's Fees Regarding Filing Suit or Preparing the QWR.

Plaintiffs seek their attoney's fees and costs associated with bringing this lawsuit. (Compl., p. 7.)[3] Plaintiffs are not entitled to recover their fees and costs because "[s]imply having to file suit as a result of a loan servicer's failure [to comply with] RESPA does not suffice as a harm warranting actual damages." *Lorang v. Ditech Fin. LLC*, No. 16-CV-425-JDP, 2017 WL

---

[3] Because the Complaint includes a number of paragraphs that are numbered the same, references to the page numbers are included if necessary.

13

3891802, at *6 (W.D. Wis. Sept. 5, 2017), *reconsideration denied*, No. 2017 WL 4570797 (W.D. Wis. Oct. 13, 2017); *see also Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Nor does simply having to file suit suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in.")

Plaintiffs also seek to recover approximately $400 in attorney's fees to "assist in drafting a qualified written request." (Compl. ¶ 53, p. 6.) Plaintiffs are not entitled to recover these fees because "damages in the form of attorney's fees associated with drafting the QWR could not be caused by defendant's failure to comply with RESPA in responding . . . [as] [d]rafting (and the expenses associated with it) necessarily preceded the alleged injury." *Moore*, 2018 WL 922370, at *8–9.

### 3. Plaintiffs' Claims Regarding the Change in Monthly Payment and Alleged "Pecuniary Losses" Under RESPA are Barred by Claim Preclusion.

One of Plaintiffs' main complaints in this case is that their monthly payment under the LMA improperly increased when the interest rate increased to 4.5%. (ECF 1, ¶ 14.) Plaintiffs could have raised any issues regarding their monthly payment under the LMA in *Diedrich I*, especially considering that the claims in that case were based on the same LMA. Under the doctrine of claim preclusion, previously called *res judicata*, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *Wisconsin Pub. Serv. Corp. v. Arby Const., Inc.*, 2011 WI App 65, ¶¶ 14-15, 333 Wis. 2d 184, 192–93, *aff'd*, 2012 WI 87, ¶¶ 14-15, 342 Wis. 2d 544. The elements of claim preclusion are: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." *Arby Const.*, 2011 WI App 65, ¶ 15. The purpose of the doctrine is to prevent

14

repetitive litigation. *Arby Const.*, 2011 WI App 65, ¶¶ 14-15, citing *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis.2d 306, 311 (1983). The doctrine seeks "to promote judicial economy and to 'conserve the resources the parties would expend in repeated and needless litigation of issues that were, or that might have been resolved in a single prior action.' " *Arby Const.*, 2011 WI App 65, ¶¶ 14-15, citing *Mrozek v. Intra Fin. Corp.,* 2005 WI 73, ¶ 28, 281 Wis.2d 448.

In *Diedrich I*, Plaintiffs filed suit against Ocwen relating to the 2011 LMA. (Ex. F – *Diedrich I*, ¶¶ 5-18.) Although they did not raise any issues regarding the change in the monthly payment in *Diedrich I*, any such issues "might have been litigated" or "might have been resolved" in *Diedrich I. Arby Const.*, 2011 WI App 65, ¶¶ 14-15. Indeed, the case here is a "repeated and needless" lawsuit involving the exact same LMA. Thus, claim preclusion bars Plaintiffs from litigating claims involving the LMA that could have been raised in *Diedrich I*.

Even if Plaintiffs could litigate any issues regarding the change in monthly payment in this case, the only evidence that they have suffered "pecuniary losses of $265.93 per month from June 1, 2016 forward" is a copy of their QWR. (Ex. E, p. 8.) The QWR alone does not support their claim for pecuniary losses. Instead, the QWR simply states why Plaintiffs think their monthly payment should not have increased, which does not show that Plaintiffs suffered "pecuniary losses of $265.93 per month from June 1, 2016 forward."

Plaintiffs essentially seek breach of contract damages based on Ocwen's alleged failure to provide a "timely answer to [their] inquiry." (ECF 1, ¶4.) Plaintiffs have not brought a breach of contract claim in this case, and, even if they did, they cannot recover breach of contract damages under RESPA because there is no causal connection between an alleged improper increase in the monthly payment to an alleged failure to respond to the QWR. In fact, there appears to be no

15

reported cases finding that breach of contract damages can be recovered for an unanswered or insufficient response to a QWR.

Even under a breach of contract theory, Plaintiffs' claim would fail. The LMA very clearly provided for an increase in the interest rate from 2.00% to 4.50%. (Ex. C, Prudent Depo., p. 23.) Once the rate increased to 4.50%, that would necessarily increase the principal and interest payment given the higher interest rate. (Ex. C, Prudent Depo., p. 73.) While the LMA does not expressly state that the monthly payment would increase when the interest rate increased to 4.5%, it goes without saying (and is simple common sense) that the monthly payment would increase based on the interest rate increase. Moreover, there is nothing in the LMA that states any increased monthly payment would be included in the balloon payment due when the Loan mautured 21 years later in February 2037, which is what Plaintiffs would have this Court believe. In fact, Natalie Diedrich testified at her deposition that she could find nothing in the LMA that says the increased payments would be applied when the balloon payment was due in 2037. (Ex. D, Natalie Depo., p. 55.)

Moreover, Wisconsin law is clear that "[i]n constructing a contract, courts cannot insert what has been omitted or rewrite a contract made by the parties." *Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶ 12, 261 Wis. 2d 70, 85. Here, the terms of the LMA are unambiguous, should be applied as written, and Plaintiffs should not be allowed to unilaterally change the terms of an agreement that they signed.

Based on the above, Plaintiffs have no evidence that they sustained any actual damages, or are entitled to statutory damages, as a result of any alleged RESPA violation, and therefore summary judgment is proper in Ocwen's favor on Count II of the Complaint.

16

## II. Summary Judgment Should Be Granted in Ocwen's Favor on the State Law Claims in Counts I and III.

### A. Summary Judgment is Proper on Count I Because Plaintiffs Do Not Allege an Impermissible Interest Rate Was Applied to their Loan.

Plaintiffs allege that Ocwen violated Section 138.052(7) and (7s)(a) of the Wisconsin Statutes by failing to respond to the QWR. (ECF 1, ¶¶ 26-27, 31-35, pp. 3-4.) Section 138.052(7) addresses permissible interest rates. *Diedrich,* 839 F.3d at 587; Wis Stats. §§ 138.052(7). Section 138.052(7) provides that "[i]nterest imposed on the amount due after acceleration or maturity of a loan may not exceed the contract rate." Wis. Stat. Ann. § 138.052(7). The Complaint does not allege that Ocwen applied an impermissible interest rate to their Loan. (ECF 1, *gen*.) Instead, they claim that their monthly payment should not have increased. (*Id*.)

Plaintiffs appear to assert the baseless claim that the 15-day response time provided for in Section 138.052(7s)(a) applies to QWRs under RESPA. Section 138.052(7s)(a) provides:

> (7s) A person who receives loan or escrow payments on behalf of itself or another person shall do all of the following:
>
> (a) Respond to a borrower's inquiry within 15 days after receiving the inquiry.

Wis. Stat. Ann. § 138.05(7s)(a).

The deadlines under Section 2605 of RESPA regarding QWRs have nothing to do with the deadline under Section 138.05(7s)(a). They are two different statutes, and RESPA allows loan servicers 30 days to respond to a QWR. 12 U.S.C.A. § 2605(e)(2). Accordingly, Plaintiffs' claims under Section 138.052(7) and (7s)(a) are baseless, and summary judgment is proper in Ocwen's favor on Count I of the Complaint.

**B.     Summary Judgment is Proper on Count III Because Plaintiffs Have Failed to Provide Any Evidence of Damages Recoverable Under RESPA.**

Plaintiffs claim that Ocwen violated Section 224.77(1)(k), (l) and (m) of the Wisconsin Statutes by failing to provide a timely answer to their inquiries. (ECF 1, pp. 6-7.) These statutory provisions provide as follows:

> (k) Violate any provision of this subchapter, ch. 138, or any federal or state statute, rule, or regulation that relates to practice as a mortgage banker, mortgage loan originator, or mortgage broker.
>
> (l) Engage in conduct that violates a standard of professional behavior which, through professional experience, has become established for mortgage bankers, *594 mortgage loan originators, or mortgage brokers.
>
> (m) Engage in conduct, whether of the same or a different character than specified elsewhere in this section, that constitutes improper, fraudulent, or dishonest dealing.

Wis. Stat. Ann. § 224.77(1)(k)–(m).

The Seventh Circuit in *Diedrich I* noted that "Wisconsin statute § 224.77(1) essentially points back to the alleged RESPA violation by prohibiting mortgage bankers and brokers from violating any federal statute that regulates their practice." *Diedrich*, 839 F.3d at 587. The court held that the claim under Section 224.77 "goes down with the federal claim's ship" for the same reasons why the RESPA claims failed – that  Plaintiffs failed to meet their burden of setting forth sufficient evidence to overcome a motion for summary judgment. *Diedrich*, 839 F.3d at 594. In other words, because Plaintiffs' RESPA claims failed, their state law claims under Section 224.77 fails as well.  Accordingly, summary judgment is proper in Ocwen's favor on Count III of the Complaint. *Id*.

18

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Ocwen respectfully requests that summary judgment be granted in its favor and against Plaintiffs on all claims in the Complaint, that the Complaint be dismissed with prejudice, and that the Court any further relief that it deems just and proper.

Dated: December 16, 2019        Respectfully submitted,

                                 */s/ Robert W. Brunner*
                                Jena M. Valdetero (IL #6290948)
                                Robert W. Brunner (IL #6203884)
                                BRYAN CAVE LEIGHTON PAISNER LLP
                                161 North Clark Street, Suite 4300
                                Chicago, Illinois 60601
                                Telephone:    (312) 602-5000
                                Facsimile:    (312) 602-5050
                                jena.valdetero@bclplaw.com
                                robert.brunner@bclplaw.com
                                *Attorneys for Ocwen Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 16, 2019, the foregoing document was electronically filed and served via the Court's CM/ECF system on all counsel of record.

                                  */s/ Robert W. Brunner*
                                  Robert W. Brunner

19