# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DANIEL AND NATALIE DIEDRICH,

    Plaintiffs,

    v.

OCWEN LOAN SERVICING, LLC,

        Defendant.

Case No. 17-cv-1104

Hon. Magistrate William E. Duffin

## OCWEN LOAN SERVICING LLC'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant, Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen"), by and through its undersigned counsel, and for its Response to Plaintiffs Daniel and Natalie Diedrich's ("Plaintiffs") Motion for Summary Judgment and Brief in Support pursuant to Fed. R. Civ. P. 56 and Civil L. R. 56 ("Motion") states:

## INTRODUCTION

This is the second lawsuit filed against Ocwen in this Court by Plaintiffs relating to alleged violations of RESPA and two Wisconsin statutes based on a loan modification agreement they entered into in 2011 and requests for information submitted to Ocwen regarding that loan modification. The court in the first case ("*Diedrich I*") entered summary judgment in Ocwen's favor based on Plaintiffs' failure to provide any evidence of damages during discovery as a result of the alleged RESPA or state law violations, even when the court found a technical violation of RESPA. Plaintiffs appealed to the Seventh Circuit, which affirmed the judgment based on Plaintiffs' failure to present evidence of any damages.

Clearly not pleased with that result after four years of litigation, Plaintiffs seek a second bite at the judicial apple in this second lawsuit, in which they assert nearly identical causes of

action against Ocwen relating to a request for information regarding the very same 2011 loan modification agreement. As in *Diedrich I*, Plaintiffs once again have failed to present any evidence during discovery in this case that Ocwen engaged in any pattern or practice of not complying with RESPA or that they suffered any damages resulting from any alleged RESPA violation. Moreover, Plaintiffs have provided no evidence in support of their Motion (other than two identical affidavits filled with speculation, conjecture and legal conclusions) that they have suffered actual damages resulting from any RESPA violation. Without more, their RESPA and related state law claims fail as a matter of law.

Moreover, the issue underpinning Plaintiffs' claims relates to their erroneous belief that their monthly mortgage payment would not change, despite the fact that the loan modification relating to their adjustable rate note clearly disclosed that their interest rate would adjust from 2% to 4.5% after five years. However, Plaintiffs have not asserted a breach of contract claim, and any claims relating to this theory are barred by claim preclusion because those claims could have been litigated and resolved in *Diedrich I*. Accordingly, the record before this Court demonstrates that judgment for Ocwen is warranted once again, and Plaintiffs' Motion should be denied.

## ARGUMENT

### I.    Standard of Review

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019); *Diedrich v. Ocwen Loan Servicing, LLC*, No. 13-CV-693, 2015 WL 1885630, at *1 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d 583 (7th Cir. 2016); Fed.R.Civ.P. 56(a). In evaluating a motion for summary judgment, the court must "consider all of the evidence in the record in the light most favorable to the non-

moving party, and . . . draw all reasonable inferences from that evidence in that party's favor." *McDaniel*, 940 F.3d at 367. Evidence relied upon must be of a type that would be admissible at trial. *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009). "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.' " *Durkin v. Equifax Check Services, Inc.,* 406 F.3d 410, 414 (7th Cir.2005).

"[S]ummary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.' " *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). "What matters at summary judgment is *evidence*." *Lindell v. Pollard*, 681 F. App'x 518, 520 (7th Cir.), *cert. denied*, 138 S. Ct. 258 (2017), citing *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (emphasis in original). A mere "scintilla of evidence" is not enough to survive summary judgment. *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001).

The record here establishes that Plaintiffs have come forth with no evidence of damages that would convince a trier of fact that they suffered actual damages resulting from any alleged RESPA violations, or are entitled to statutory damages under RESPA based on any pattern or practice of noncompliance with the statute. Plaintiffs rely on *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 423 (7th Cir. 2005) in support of their argument that they are entitled to summary judgment. (Brief, p. 1.) However, the court in *Durkin* denied a motion for summary judgment brought by the plaintiffs based, in part, because "they failed to bring forth admissible extrinsic evidence to support their claims." *Durkin*, 406 F.3d at 423. Like *Durkin*, Plaintiffs have failed to bring forth admissible evidence to support their claim for damages, and therefore their Motion for Summary Judgment should be denied.

3

## II. RESPA Only Requires Loan Servicers to Respond to Inquiries Regarding the "Servicing" of a Loan.

### A. The Purported RESPA Inquiry Does Not Relate to the "Servicing" of the Loan.

Plaintiffs' inquiry to Defendant did not relate to the servicing of their loan but instead related to their own misunderstanding of how their payment would change due to the terms of the original adjustable rate note and subsequent modification of their note which likewise contained an adjustable interest rate. Thus, it was not an inquiry into the "servicing" of a loan covered by RESPA.

RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans. *Diedrich v. Ocwen Loan Servicing, LLC*, No. 13-CV-693, 2015 WL 1885630, at *5 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d 583 (7th Cir. 2016). The statute imposes a number of duties on loan servicers, including a duty to respond to a borrower's written requests for information. 12 U.S.C. § 2605(e). A "qualified written request" ("QWR") triggers a loan servicer's duties under RESPA to acknowledge and respond. *Id.*

The Seventh Circuit has held that the statutory duty to respond to requests for information from borrowers "does not arise with respect to all inquiries or complaints from borrowers to servicers." *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017). Rather, the statute "covers only written requests alleging an account error or seeking information relating to loan servicing." *Id.* Section 2605(e) of RESPA defines "Servicing" as:

> . . . receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

4

12 U.S.C.A. § 2605(i)(3).

The Seventh Circuit noted that a QWR "can't be used to collect information about, or allege an error in, the underlying mortgage loan." *Perron*, 845 F.3d at 857.

Here, while their appeal in *Diedrich I* to the Seventh Circuit was pending, Plaintiffs sent a June 1, 2016 letter to Ocwen (the "June 1 Letter") in which they complained about the terms of the LMA that they signed five years earlier to resolve a foreclosure action. (ECF 1, Ex. A.) Plaintiffs provided Ocwen a number of their personal opinions and calculations regarding the LMA. Some examples from the June 1 Letter include:

> So, as of July 1, 2016, the principal should be $189,479.21 ($207,456.98 - $17,977.77.) If the new interest rate of 4.5% was applied to that amount and amortized over the remainder of the loan the principal and interest payment would be $1,163.62, not $906.91.
>
> . . .
>
> The modification agreement does not say that the payment would ever increase. Even if the payment were to increase, the same percentage reduction should have applied to any new payments. The first modified payments were 24.8% below what a standard amortization would call for ($212.53 is 24.8% of $853.26), so after the interest rate hike, the highest the payment should have been is 24.8% below a standard payment; if the standard payment would be $875.04 ($1,163.62 x 0.752). Again, this is lower than $906.81.
>
> . . .

(ECF 1, Ex. A.)

Moreover, Plaintiffs requested "a description of how the initial payment of principal and interest [under the LMA] was arrived at, including any formulas applied to determine that amount," and a "statement of whether Ocwen believes the interest rate on the loan can exceed 4.5%, and if the answer is affirmative, then a statement of any and all reasons for believing that

5

the interest rate can exceed 4.5% on this loan at any time, including but not limited to provision [sic] of any documents which in Ocwen's opinion supports that belief . . ." (ECF 1, Ex. A.)

These inquires (or personal opinions and calculations) do not seek information relating to Ocwen's "servicing" of the Loan as defined by RESPA, *i.e.*, receiving scheduled periodic payments from a borrower pursuant to the terms of a loan, including amounts for escrow accounts, and making the payments of principal and interest and such other payments with respect to the amounts received from a borrower as may be required pursuant to the terms of the loan. 12 U.S.C.A. § 2605(i)(3). Instead, Plaintiffs appeared to be challenging the terms itself of the LMA that they signed, which they were clearly not happy with when the interest rate adjusted five years later. Moreover, Plaintiffs asked for "formulas" allegedly used to determine the amount of principal and interest when they signed the LMA (which does not involve "servicing" the loan); whether Ocwen has any "opinions" on whether the 4.5% interest rate would increase (even when the LMA makes clear that the 4.5% interest rate was fixed);[1] and the amount of a balloon payment that would not become due until 2037. These inquires (better labeled as grievances about the LMA that they signed in 2011) do not constitute a "qualified written request" under RESPA as none of them relate to the servicing of their loan.

**B.    Ocwen Did Not Impermissibly Increase the Monthly Payment.**

Based on their Motion for Summary Judgment, Plaintiffs' claims appear more focused on Ocwen's alleged improper increase in their monthly loan payment under the LMA than Ocwen's response to the June 1, 2016 Letter. Any claims relating to an increase in the monthly payment are without merit (and are barred by claim preclusion discussed below). The LMA, which modified Plaintiffs' adjustable rate note, very clearly provided for an increase in the interest rate

---

[1] The LMA clearly provides that the 4.5% rate is fixed: "At the end of the [Trial Period] your rate will be 4.5% *and will remain fixed until the maturity of your loan*." (ECF 44-4.)

6

from 2.00% to 4.50% after five years. (ECF 44-10, p. 23.) Once the rate increased to 4.50%, that would necessarily increase the principal and interest payment given the higher interest rate. (ECF 44-10, p. 73.) While the LMA does not expressly state that the monthly payment would increase when the interest rate increased to 4.5%, it goes without saying (and is simple common sense) that the monthly payment would increase based on the interest rate increase, which is what happens with an adjustable rate note like the one signed by Plaintiffs. Moreover, there is nothing in the LMA that states any increased monthly payment would be included in the balloon payment due when the Loan matured 21 years later in February 2037, which is what Plaintiffs would have this Court believe. In fact, Natalie Diedrich admitted at her deposition that she could find nothing in the LMA that says the increased payments would be applied when the balloon payment was due in 2037. (ECF 44-12, p. 55.)

Finally, Plaintiffs should not be surprised that their monthly payment would increase after the interest rate changed to 4.50%. The LMA provides that the terms and conditions of the Adjustable Rate Note they signed in February 2007 "remain in full force and effect" other than the terms that were modified under the LMA. (ECF 44-4, p. 3.) The Adjustable Rate Note clearly provided for changes in the monthly payment:

> 3.    PAYMENTS
>
> . . .
>
> (C)    Monthly Payment Changes
>
> Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
>
> . . .
>
> 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

7

. . .

    (C)      Calculation of Changes

    .  .  .  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owed at the Change Date in full on the Maturity Date at my new interest in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(ECF 44-4, p. 2.)

Because the Note clearly contemplated changes in the monthly loan payment, and the terms and conditions of the Note "remain in full force and effect" other than the terms modified under the LMA, Plaintiffs not only should have not been surprised that their monthly payment increased after the interest rate changed to 4.50%, but they should have *expected* the payment to increase.

## III.    Plaintiffs Are Not Entitled to Summary Judgment on their RESPA Claims Because They Have Provided No Evidence of Actual Damages Resulting from any Violation of RESPA.

Plaintiff cannot prevail on their RESPA claim because they have proffered no admissible evidence of actual damages arising from any supposed RESPA violation.

In Count II of the Complaint, Plaintiffs allege that Ocwen violated Sections 2605(e)(1) and (2) by allegedly not providing "a timely answer to [their] inquiry . . ." included in the June 1 Letter.  (ECF 1, ¶ 35.)  Plaintiffs claim they "were unable to ascertain if the increase in payments was in error because Ocwen refused and failed to answer their June 1, 2016 Letter, and because they could not be sure if the increase in payments was an error, the Diedrichs had to make the higher payment while awaiting an answer."  *Id*. As demonstrated above, Plaintiffs' issues are with the terms of the LMA itself, and not with the way in which Ocwen serviced the loan. Accordingly, Plaintiffs have failed to provide evidence of any casual connection between

Ocwen's lack of response to the June 1 Letter and a pre-existing requirement to make their monthly mortgage payments under the newly adjusted interest rate.

Section 2605 provides that an individual may recover "actual damages" as a result of a failure to comply with a provision of Section 2605 (including responding to QWRs). 12 U.S.C.A. § 2605(f)(1). A claim brought under Section 2605(e)(2) fails if a plaintiff "does not put forth any competent evidence of damages." *Diedrich*, 2015 WL 1885630, at *9. Even though the court in *Diedrich I* found that Ocwen did not comply with Section 2605(e)(2) because it did not send a sufficient response to a QWR, the court still entered summary judgment in Ocwen's favor because Plaintiffs did not "put forth any competent evidence of damages." *Id.*[2] Plaintiffs are not entitled to summary judgment in this case because, like *Diedrich I*, they have failed to provide any competent evidence of damages.

### A. Plaintiffs Have Insufficient Evidence to Support their Request for Emotional Distress Damages.

A party seeking emotional distress damages "must provide the court with a reasonably detailed explanation of the injuries suffered. Conclusory statements of stress are not sufficient." *Diedrich*, 2015 WL 1885630, at *8. The record here is devoid of any evidence supporting Plaintiffs' claims for $50,000 in emotional distress damages.

In support of their Motion, Plaintiffs rely upon their own self-serving conclusory opinions regarding harm which are inadmissible as set forth more fully in Ocwen's Evidentiary Objections filed concurrently herewith. Both Plaintiffs attest that worrying about the loan and what ***might*** happen has caused them emotional distress. (ECF 42, 43.) For example, Plaintiffs state that they are "fearful that Ocwen will continue to reset the payments" but have provided no evidence that would justify their fears, particularly in light of the clear terms of the LMA which

---

[2] Ocwen has filed its own Motion for Summary Judgment, which is currently being briefed. (ECF 24.)

establish that the interest rate would only adjust once after five years. (ECF 42, 43 ¶ 17.) Plaintiffs attest they have "to constantly worry that Ocwen will misapply our money" but have provided no evidence that their money has been misapplied. (ECF 42, 43 ¶ 19.) Plaintiffs further attest that they are in "constant fear that this problem with the amount of the payment will affect our credit score" and "we have to worry that there are negative credit reports being made about us," but have provided no evidence that their credit scores have been affected by the amount of the home loan payment, or that there are any negative credit reports concerning the home loan. (*Id*.) They also attest that "these worries are made worse by the fact that some statements we receive have unusual or unclear information," but have provided no evidence of any "unusual or unclear" information in any of these statements. (ECF 42, 43 ¶ 20.) This affidavit testimony is uncertain, speculative and filled with conjecture, and is entirely inadmissible as set forth in Ocwen's Evidentiary Objections. As noted above, Plaintiffs cannot recover damages based on speculation or conjecture. *Sopha*, 230 Wis. 2d at 227.

Plaintiffs have also produced no documents in discovery[3] or in support of the Motion that support their claims for emotional distress, including evidence of any medical or mental health treatment or expenses that they received as a result of Ocwen's alleged conduct. (ECF 44-13, p. 7.) In fact, both Mr. and Mrs. Diedrich testified that they have never seen a psychologist or psychiatrist with regard to the alleged emotional distress that they are claiming in this case. (*Id*.; ECF 44-12, p. 24.) Although Mrs. Diedrich alleges she has suffered head and neck pain for which she was prescribed a muscle relaxer, **by her own admission**, she is not seeking to recover

---

[3] Defendant asked Plaintiffs for any documents relating to any medical or mental health treatment that they received as a result of Defendant's alleged conduct in this case, and their response was "None exists." (ECF 44-13, p. 8.) Defendant asked Plaintiffs for any documents relating to costs they incurred for any treatment they received for their alleged emotional distress, and their response was "None exists." (*Id*.) Defendant also asked Plaintiffs to produce all documents relating to their RESPA and state law claims, and the damages they have alleged suffered as a result of those claims. Plaintiffs produced no documents other than a copy of their June 1, 2016 Letter. (*Id*.)

the costs of the medication or the treatment she received for the headaches and pain, nor does she rule out other factors in her life that may be contributing to these alleged issues. (ECF 44-12, pp. 21-25.)

Notably, the record demonstrates that Plaintiffs' alleged worry and stress could have been avoided if they had simply contacted Ocwen to discuss their concerns after sending the June 1, 2016 Letter. According to Ocwen's business records, Plaintiffs never contacted Ocwen between the time they sent the June 1, 2016 Letter and filing this lawsuit in August 2017. (*See* Exhibit B, Ocwen's Statement of Additional Proposed Findings of Fact.)

Even more dooming to their damages claims is that neither Mr. nor Mrs. Diedrich could explain, let alone provide evidence of, how they calculated the $50,000 in emotional distress damages they seek. ("I know that it's just a burden on our lives every – every month not knowing where we're going with this thing. So, I mean, I don't recall how we came up with the [$50,000] . . .") (ECF 44-11, p. 28.); ("I guess I can't say exactly how I came up with that dollar amount, but taking into consideration all of the emotional distress that this has caused it's an amount that we found acceptable.") (ECF 44-12, p. 20.) It is well settled that a plaintiff's damages must not be uncertain and speculative. *Manney v. City of Milwaukee*, No. 17-CV-223, 2018 WL 2324107, at *2 (E.D. Wis. May 21, 2018); *see also Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 227, 601 N.W.2d 627, 634 (1999) ("In Wisconsin a claimant cannot recover for speculative or conjectural damages."); *Diedrich*, 2015 WL 1885630, at *8 ("Conclusory statements of stress are not sufficient.")

As noted above, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901. A mere "scintilla of evidence" is not enough to

survive summary judgment. *Pugh*, 259 F.3d at 625 (7th Cir. 2001). Plaintiffs have provided no summary judgment evidence to support their request for emotional distress damages in this case. Even if they had a "scintilla of evidence" (which they do not), that is not enough to survive summary judgment. *Pugh*, 259 F.3d at 625.

**B.     Like in *Diedrich I*, Plaintiffs Also Present No Evidence to Support their Claim for Emotional Distress Damages.**

As a matter of law, the *Diedrich I* decision is binding and dispositive on the Plaintiffs' RESPA claims because the allegations herein and the evidence (or lack thereof) identified by Plaintiffs are identical to those addressed in *Diedrich I*. In their moving papers, Plaintiffs fail to overcome the deficiency of evidence in support of their claims for a second time.

In *Diedrich I*, despite finding that the Ocwen had failed to meet the requirements of RESPA in their QWR response, the court granted Ocwen's motion for summary judgment because Plaintiffs "failed to provide evidence constituting a detailed explanation of their emotional distress." *Diedrich*, 2015 WL 1885630, at *9. Like her testimony in this case, Natalie Diedrich's testimony in *Diedrich I* regarding her alleged emotional distress was determined by the court to be vague and conclusory. *Id*. She testified that the basis of her emotional distress was "everything that Ocwen has put us through over the three years of this lawsuit ... like I said, the stress and the having to constantly worry about this monthly, and to have an attorney continuously for every day of my life." *Id*. Mr. Diedrich's testimony in *Diedrich I* was also deemed to be conclusory as he simply testified that Ocwen's actions caused him stress, including stress on his relationship with his wife. *Id*. The court held that the testimony "they experienced 'stress' and 'worry' based on 'everything' Ocwen has done is conclusory and vague." *Id*. Moreover, the court noted that Plaintiffs – like here – did not seek any treatment for the alleged emotional distress purportedly caused by Ocwen. *Id*.

In affirming the lower court's entry of summary judgment, the Seventh Circuit held that the "district court did not err in determining that, even accepting the Diedrichs' claim that they suffered damages, they failed to put forth evidence sufficient to establish every element that is essential to their claim and for which they would bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 593 (7th Cir. 2016). The Seventh Circuit further noted that the Diedrichs "failed to demonstrate the essential element that they were injured specifically by Ocwen's inadequate response to a request for information under RESPA § 2605(e)(2)." *Id.*

The case at bar is almost a mirror image of *Diedrich I.* Once again, Plaintiffs have "failed to put forth evidence sufficient to establish every element that is essential to their claim and for which they would bear the burden of proof at trial." *Diedrich*, 839 F.3d at 593. Accordingly, their Motion for Summary Judgment should be denied.

Plaintiffs argue that *Diedrich I* is different than this case because their claims for damages in *Diedrich I* were "essentially from the foreclosure proceedings and loan modification process, rather than any failure to answer the QWR." (Brief, p.7.) That is a blatant misinterpretation of *Diedrich I.* Because Plaintiffs filed the lawsuit, they surely must know that the complaint in *Diedrich I* was based on Ocwen's alleged failure to respond to a request for information. *Diedrich*, 839 F.3d at 587 ("Based on Ocwen's *failure to respond to their request for information*, the Diedrichs filed a complaint against Ocwen alleging violations of Wisconsin laws regarding mortgage loans . . ."); (". . . Natalie Diedrich's testimony says nothing about how Ocwen's failure to provide the specific information requested *under RESPA § 2505(e)(2) (as opposed to the lawsuit or the foreclosure)* caused the injury . . .") *Diedrich*, 839 F.3d at 592 (emphasis added). As in *Diedrich I*, Plaintiffs are unable to "demonstrate the essential element

13

that they were injured specifically by Ocwen's inadequate response to a request for information under RESPA § 2605(e)(2)." *Diedrich*, 839 F.3d at 593.

Moreover, *Diedrich I* has been twice cited for the proposition that controls here – failure to provide evidence of damages related to any purported QWR violation warrants summary judgment in favor of the servicer. *See, e.g., Moore v. Wells Fargo Home Mortg.*, No. 16-CV-656-WMC, 2018 WL 922370, at *1 (W.D. Wis. Feb. 15, 2018), *aff'd sub nom. Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050 (7th Cir. 2018) (granting summary judgment in the loan servicer's favor, noting that "[e]ven if plaintiffs had advanced enough evidence for a reasonable trier of fact to find a violation of RESPA or Wisconsin state law . . . it is also plaintiffs' burden to come forward with evidence sufficient to support an award of actual damages to pursue their RESPA claim."); *Lorang v. Ditech Fin. LLC*, No. 16-CV-425-JDP, 2017 WL 3891802 (W.D. Wis. Sept. 5, 2017), *reconsideration denied*, 2017 WL 4570797 (W.D. Wis. Oct. 13, 2017) (holding that plaintiffs failed to submit adequate evidence of injury to survive a motion for summary judgment on their RESPA claim.)

Plaintiffs rely on one unreported California decision in *Johnson v. HSBC Bank USA, Nat. Ass'n*, No. 3:11-CV-2091-JM-WVG, 2012 WL 928433 (S.D. Cal. Mar. 19, 2012) to support their argument that they have provided sufficient evidence of damages. *Johnson*, however, involved a motion to dismiss and not a summary judgment motion. The court held that, at the pleading stage, the plaintiff alleged that the failure to receive a response to the QWR caused him to pay more than was necessary on his loan, and denied the motion to dismiss. *Johnson*, 2012 WL 928433, at *6. *Johnson* is unavailing as the evidence in this case is before the Court, and Plaintiffs are not entitled to the benefit of their unsupported pleading.

14

**C.    Plaintiffs' Request to Recover Attorney's Fees Is Insufficient to Support a Damages Claim under RESPA**

As a matter of law, Plaintiffs are not entitled to recover their attorneys' fees and costs associated with bringing this lawsuit because "[s]imply having to file suit as a result of a loan servicer's failure [to comply with] RESPA does not suffice as a harm warranting actual damages." *Lorang*, 2017 WL 3891802, at *6; *see also Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Nor does simply having to file suit suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in.")

Plaintiffs also seek to recover approximately $400 in attorney's fees to "assist in drafting a qualified written request." (Compl. ¶ 53, p. 6.) Plaintiffs are not entitled to recover these fees because "damages in the form of attorney's fees associated with drafting the QWR could not be caused by defendant's failure to comply with RESPA in responding . . . [as] [d]rafting (and the expenses associated with it) necessarily preceded the alleged injury." *Moore*, 2018 WL 922370, at *8–9.

Based on the above, Plaintiffs have put forth no evidence that they sustained any actual damages as a result of any RESPA violation, and therefore their Motion for Summary Judgment regarding the RESPA claims in Count II should be denied.

**IV.    Plaintiffs Are Also Not Entitled to Summary Judgment on their RESPA Claims Because They Have Provided No Evidence of Any Pattern of Practice of Noncompliance with RESPA Entitling Them to Statutory Damages.**

Plaintiffs' brief contains no argument regarding their request for statutory damages under RESPA, and therefore it is waived as a matter of law. *Agropur MSI, LLC v. Sterling Tech., Inc.*, No. 15-CV-96-BBC, 2016 WL 1029563, at *2 (W.D. Wis. Mar. 15, 2016); citing *Narducci v.*

*Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (arguments not raised in summary judgment brief are waived). Even if the argument had not been waived, it still fails.

Section 2605(f)(1)(B) of RESPA provides that individuals may recover statutory damages of $2,000 "in the case of a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C.A. § 2605(f)(1)(B). In their Complaint, Plaintiffs allege that "[u]pon information and belief Ocwen has a pattern or practice of failing to response to qualified written requests which will be demonstrated through discovery in this matter." (ECF 1, ¶¶ 11, 47.) Allegations based "upon information and belief" that a defendant has a pattern or practice of not complying with Section 2605(e) are insufficient as a matter of law to show a pattern or practice. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 276 (S.D.N.Y. 2017); *Giordano v. MGC Mortg., Inc*, 160 F. Supp. 3d 778, 785 (D.N.J. 2016).

Plaintiffs have proffered no evidence in their moving papers demonstrating that it was Ocwen's "standard operating procedure" to not comply with Section 2605(e). *Wirtz*, 886 F.3d at 720. Nor could they, since Plaintiffs issued no written discovery to Ocwen. Because Plaintiffs have proffered no evidence to support their conclusory and speculative claim, they are not entitled to statutory damages under RESPA.[4]

---

[4] Moreover, Plaintiffs would have to provide evidence that noncompliance with the statute "was the company's standard operating procedure—the regular rather than the unusual practice." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720 (8th Cir. 2018), *reh'g denied* (May 29, 2018), citing *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016). The Seventh Circuit in *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017), held that the plaintiffs failed to produce evidence showing a pattern or practice of RESPA noncompliance and therefore had no viable claim for statutory damages. The court noted that the "best they [could] muster is a pair of district-court cases holding Chase liable for RESPA violations," and "[t]wo examples of similar behavior—in different states, separated by a handful of years, and with no evidence of coordination—isn't enough to support recovery of statutory damages." *Perron*, 845 F.3d at 857; *see also McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010) (two violations of Section 2605(e) insufficient to support a pattern or practice of noncompliance); *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (same).

16

## V. Plaintiffs Are Also Not Entitled to Summary Judgment on their State Law Claims.

### A. The Section 138.052 Claims (Count I) Fail Because Plaintiffs Do Not Allege an Impermissible Interest Rate Was Applied to their Loan.

Plaintiffs allege that Ocwen violated Section 138.052(7) and (7s)(a) of the Wisconsin Statutes by failing to respond to the QWR. (ECF 1, ¶¶ 26-27, 31-35, pp. 3-4.) However, section 138.052(7) addresses permissible interest rates. *Diedrich,* 839 F.3d at 587; Wis Stats. §§ 138.052(7). Section 138.052(7) provides that "[i]nterest imposed on the amount due after acceleration or maturity of a loan may not exceed the contract rate." Wis. Stat. Ann. § 138.052(7). Plaintiffs have neither alleged in the Complaint or come forth with any summary judgment evidence that Section 138.052(7) was violated in any way, or even applies here. (ECF 1, *gen*.)  Instead, they claim that their monthly payment should not have increased, which is belied by the plain language of the LMA. (*Id*.)

### B. The Section 224.77 Claims (Count III) Fail Because Plaintiffs' RESPA Claims Fail as a Matter of Law.

The Section 224.77 claims are derivative of their RESPA claims which fail as a matter of law as set forth above and cannot therefore provide a basis for recovery under Wisconsin law.

Plaintiffs claim that Ocwen violated Section 224.77(1)(k), (l) and (m) of the Wisconsin Statutes by failing to provide a timely answer to their inquiries. (ECF 1, pp. 6-7.) These statutory provisions provide that [servicers?/creditors?] are prohibited from the following:

> (k) Violate any provision of this subchapter, ch. 138, or any federal or state statute, rule, or regulation that relates to practice as a mortgage banker, mortgage loan originator, or mortgage broker.

> (l) Engage in conduct that violates a standard of professional behavior which, through professional experience, has become established for mortgage bankers,  mortgage loan originators, or mortgage brokers.

> (m) Engage in conduct, whether of the same or a different character than specified elsewhere in this section, that constitutes improper, fraudulent, or dishonest dealing.

Wis. Stat. Ann. § 224.77(1)(k)–(m).

The Seventh Circuit in *Diedrich I* noted that "Wisconsin statute § 224.77(1) essentially points back to the alleged RESPA violation by prohibiting mortgage bankers and brokers from violating any federal statute that regulates their practice." *Diedrich*, 839 F.3d at 587. The court held that the claim under Section 224.77 "goes down with the federal claim's ship" for the same reasons the RESPA claims failed – that Plaintiffs failed to meet their burden of setting forth sufficient evidence to overcome a motion for summary judgment. *Diedrich*, 839 F.3d at 594. In other words, because Plaintiffs' RESPA claims failed, their state law claims under Section 224.77 fail as well. *Id.*; *see also Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053–54 (7th Cir. 2018). Accordingly, Plaintiffs' Motion for Summary Judgment on Count III should be denied.

## VI.    The LMA Alleged Payment Increase Cannot Support Plaintiffs' Claims.

### A.    Claim Preclusion Bars Litigating Any Issues Regarding their Monthly Payment.

As discussed above, the crux of Plaintiffs' dispute with Ocwen is their unsupported belief that Ocwen allegedly improperly increased their monthly loan payment, as opposed to their claim that Ocwen's failure to substantively response to the June 1, 2016 Letter caused them any alleged harm. However, Plaintiffs could have raised any issues regarding their monthly payment under the LMA in *Diedrich I*, especially considering that the claims in that case were based on the same LMA. Because they did not do that, all the LMA related claims are barred from being litigated in this case, as a matter of law.

Under the doctrine of claim preclusion, previously called *res judicata*, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *Wisconsin Pub. Serv. Corp. v. Arby Const., Inc.*, 2011 WI App 65, ¶¶ 14-15, 333 Wis. 2d 184, 192–93, *aff'd*, 2012 WI 87, ¶¶ 14-15, 342 Wis. 2d 544. The elements of claim preclusion are: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." *Arby Const.*, 2011 WI App 65, ¶ 15. The purpose of the doctrine is to prevent repetitive litigation. *Arby Const.*, 2011 WI App 65, ¶¶ 14-15, citing *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis.2d 306, 311 (1983). The doctrine seeks "to promote judicial economy and to 'conserve the resources the parties would expend in repeated and needless litigation of issues that were, or that might have been resolved in a single prior action.' " *Arby Const.*, 2011 WI App 65, ¶¶ 14-15, citing *Mrozek v. Intra Fin. Corp.,* 2005 WI 73, ¶ 28, 281 Wis.2d 448, 699 N.W.2d 54.

In *Diedrich I*, Plaintiffs filed suit against Ocwen relating to the 2011 LMA. (Ex. F – *Diedrich I*, ¶¶ 5-18.)   Specifically, in *Diedrich I*, they litigated whether Ocwen properly responded to their claims (included in a letter requesting information) that Ocwen applied the incorrect interest rate to their LMA on and after July 2011, "over-escrowed their account," and improperly charged litigation fees. *Diedrich*, 2015 WL 1885630, at *5. Although they did not raise any issues regarding the change in the monthly payment in *Diedrich I*, any such issues "might have been litigated" or "might have been resolved" in *Diedrich I*. *Arby Const.*, 2011 WI App 65, ¶¶ 14-15.   Indeed, the case here, where Plaintiffs claim that Ocwen improperly increased their monthly loan payment under the LMA, is a "repeated and needless" lawsuit

involving the exact same LMA. There is no reason to allow Plaintiffs a second bite at the judicial apple here when they already obtained a full and final adjudication of all the claims they could have and should have raised related to the LMA in the prior case. Thus, claim preclusion bars Plaintiffs from litigating claims involving the LMA that could have been raised in *Diedrich I*.

**B.  Plaintiffs' Attack on the LMA is a Non-Viable Breach of Contract Claim in Disguise which Fails for a Variety of Reasons.**

**1.  Ocwen Did Not Breach the LMA By Increasing the Monthly Payment.**

Plaintiffs essentially seek breach of contract damages based on Ocwen's alleged failure to provide a "timely answer to [their] inquiry." (ECF 1, ¶4.) However, Plaintiffs have not brought a breach of contract claim in this case. Even if they did, they cannot recover breach of contract damages under RESPA, because there is no causal connection between an alleged improper increase in the monthly payment and an alleged failure to respond to the June 1 Letter.  In fact, there appears to be no reported cases finding that breach of contract damages can be recovered for an unanswered or insufficient response to a June 1 Letter.

Even under a breach of contract theory, Plaintiffs' claim would fail. A breach of contract claim under Wisconsin law requires proof of the following: (1) the existence of an enforceable contract; (2) a breach of that contract; and (3) damages.  *Kaste v. Amery Reg'l Med. Ctr., Inc*., 2016 WI App 75, ¶ 9, 371 Wis. 2d 759, 886 N.W.2d 592.  The LMA is an enforceable contract, but Plaintiffs have provided no evidence that Ocwen breached the LMA by increasing the monthly payment, The LMA very clearly provided for an increase in the interest rate from 2.00% to 4.50% after five years.  (Ex. C, Prudent Depo., p. 23.)  Once the rate increased to 4.50%, that would necessarily increase the principal and interest payment given the higher interest rate. (Ex. C, Prudent Depo., p. 73.)  While the LMA does not expressly state that the monthly payment

would increase when the interest rate increased to 4.5%, it goes without saying (and is simple common sense) that the monthly payment would increase based on the interest rate increase.

Plaintiffs further argue that the LMA requires that "P&I payments remain the same regardless of the one-time interest rate increase." (Brief, p. 6.) That is false and is directly contradicted by the record evidence – the LMA itself. Nowhere in the LMA does it say that principal and interest payment "remain the same regardless of the one-time interest rate increase." Wisconsin law does not allow them to rewrite the contract. Wisconsin law is clear that "[i]n constructing a contract, courts cannot insert what has been omitted or rewrite a contract made by the parties." *Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶ 12, 261 Wis. 2d 70, 85. Here, the terms of the LMA are unambiguous, should be applied as written, and Plaintiffs should not be allowed to unilaterally change the terms of an agreement that they signed.

Plaintiffs have identified no authority that supports their attempt to rewrite the LMA other than a concurring opinion in an easily distinguishable case where the Wisconsin Supreme Court held that a savings and loan association could increase the interest rate on a mortgage loan more than once under an "interest escalator clause" found in the mortgage. *Sec. Sav. & Loan Ass'n v. Wauwatosa Colony, Inc.*, 71 Wis. 2d 174, 176, 237 N.W.2d 729, 730 (1976). The concurring opinion in *Wauwatosa Colony* provides no support for Plaintiffs' theory, and concurring opinions have no precedential value under Wisconsin law in any event. *Ives v. Coopertools, a Div. of Cooper Indus., Inc.*, 208 Wis. 2d 55, 58, 559 N.W.2d 571, 573 (1997).

### 2. The LMA is Not Ambiguous and Should Be Interpreted to Avoid An Unreasonable and Absurd Result.

Plaintiffs' argument that the LMA is ambiguous is premised on a breach of contract claim that Plaintiffs have not brought in this case. Even if they had brought a breach of contract claim,

21

the terms of the LMA are not ambiguous. Plaintiffs argue that the LMA is ambiguous "about whether the P&I can increase if the interest rate changes, and must be construed against Ocwen as the drafter" and claim that Ocwen should not "be allowed to effectively amend the contract to read the way [it] wanted it to read." (Brief, p. 6.) Such a claim is ironic given that Plaintiffs are the ones who want to amend the LMA to say that the monthly payment will never increase even though the interest rate more than doubled from 2% to 4.5% after five years.

Even if there was any basis for Plaintiffs' claim of ambiguity, under Wisconsin law, courts "must interpret contracts to avoid unreasonable and absurd results." *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶ 11, 351 Wis. 2d 123, 134–35, 839 N.W.2d 425, 431. *Id.* The *Chapman* court noted that "[w]hen interpreting an ambiguous contract provision, we must reject a construction that renders an unfair or unreasonable result. Likewise, we should adopt a construction that will render the contract a rational business instrument so far as reasonably practicable." *Id.* Plaintiffs ask this Court to interpret the LMA to say, as a matter of law, that their monthly loan payment would not increase even when the interest rate more than doubled from 2% to 4.5%. Such an interpretation would be absurd, particularly when the monthly payment could change based on increases (or decreases) in the monthly escrow payment on the loan.[5] Even more absurd is the Plaintiffs' purported understanding that all of the increased payments would be due 24 years later when the balloon payment became due. Importantly, Plaintiffs offer no evidence in the record to support this unreasonable interpretation of the LMA.[6]

---

[5] The Mortgage provides that payments due under the Note shall include amounts due for taxes and insurance. (ECF 44-3, p. 4.) The amount of taxes and insurance can, of course, change over time, which would be taken into account when determining the monthly payment due.

[6] Plaintiffs' reliance on *Seitzinger v. Cmty. Health Network*, 2004 WI 28, 270 Wis. 2d 1, 676 N.W.2d 426 in support of their argument that the LMA is ambiguous is misplaced. The court in *Seitzinger* found that the subject contract was not ambiguous and applied it as written.

Moreover, Plaintiffs' unsupported belief is insufficient to create a question of fact, because Plaintiffs had a duty to read the LMA before they signed it. *Nauga, Inc. v. Westel Milwaukee Co.*, 216 Wis. 2d 306, 314–15, 576 N.W.2d 573, 577 (Ct. App. 1998) ("It is well settled that, where a party accepts a written instrument in consummation of an agreement entered into, it is his duty to know its contents, unless there be fraud or mistake of such a nature that he could not reasonably have informed himself when put upon inquiry.), *citing Carney–Rutter Agency v. Central Office Bldgs.*, 263 Wis. 244, 252–53, 57 N.W.2d 348, 352 (1953). "Thus, regardless of the parties' actual intentions, their execution of an unambiguous written contract establishes an enforceable "meeting of the minds" as a matter of law." *Nauga*, 216 Wis. 2d 306 at 315. Plaintiffs agreed to the following provision included in the LMA:

> (h)  You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(ECF 45, Ex. 8.)

Accordingly, Plaintiffs cannot now claim their alleged misunderstanding of the LMA's terms gives rise to the claims asserted in this case.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Ocwen respectfully request that Plaintiffs' Motion for Summary Judgment be denied for the reasons stated herein, that the Complaint be dismissed with prejudice, and that the Court any further relief that it deems just and proper.

23

Dated: February 7, 2020

Respectfully submitted,

*/s/ Robert W. Brunner*

Jena M. Valdetero (IL #6290948)
Robert W. Brunner (IL #6203884)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois  60601
(312) 602-5000
jena.valdetero@bclplaw.com
robert.brunner@bclplaw.com
*Attorneys for Ocwen Loan Servicing, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 7, 2020, the foregoing document was electronically filed and served via the Court's CM/ECF system on all counsel of record.

*/s/ Robert W. Brunner*

Robert W. Brunner