IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANIEL AND NATALIE DIEDRICH, | |
| Plaintiffs, | Case No. 17-cv-1104 |
| v. | Hon. Magistrate William E. Duffin |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

## OCWEN LOAN SERVICING LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

In their Response, Plaintiffs fail to identify any evidence that creates any genuine issues of fact regarding the claims raised in the Complaint. Specifically, they have provided no evidence that they suffered any actual damages resulting from any alleged RESPA violation, nor do they adequately refute Ocwen's argument that Plaintiffs have provided no evidence of any pattern or practice of noncompliance with RESPA. They have not proven that an impermissible interest rate was applied to their loan entitling them to relief under Wis. Stat. § 138.052(7). They fail to support their claim under Wis. Stat. § 224.77. Finally, they have done nothing to counter Ocwen's argument that their claims relating to any alleged wrongful increase in their loan payment are barred by claim preclusion. Just as in *Diedrich I*, where the court entered summary judgment in Ocwen's favor based on Plaintiffs' failure to provide any evidence of damages, so should this Court grant summary judgment in Ocwen's favor here.

# ARGUMENT

## I. Plaintiffs Have Not Provided Sufficient Evidence of Damages in this Case to "Merit a Jury Trial."

As demonstrated in Ocwen's Motion for Summary Judgment, even if this Court finds a violation of RESPA, Plaintiffs have provided no evidence of damages resulting from any violation of RESPA to defeat summary judgment. Plaintiffs were given the opportunity during discovery to come forth with evidence of damages. They issued no written discovery to Ocwen, and took only one deposition (an Ocwen corporate representative). Plaintiffs did not seek to depose anyone from Ocwen who had anything to do with the purported QWR (the June 1, 2016 Letter), or the Loan Modification Agreement ("LMA") that is really at the heart of this lawsuit. Instead, Plaintiffs have chosen to rely on the deposition testimony from the *first* case (*Diedrich I*) to support their claim for damages in *this* case, which is curious given that lack of damages was the reason *Diedrich I* failed at summary judgment. Effectively, Plaintiffs acknowledge that they have no evidence here to support their claim for damages. (ECF 38.) Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901. A mere "scintilla of evidence" is not enough to survive summary judgment, and Plaintiffs here have not even provided that. *Pugh*, 259 F.3d at 625 (7th Cir. 2001). Accordingly, summary judgment in Ocwen's favor is proper.

### A. Like *Diedrich I*, Plaintiffs Have Provided No Evidence of Actual Damages Resulting from any Violation of RESPA.

In their Response, Plaintiffs assert that "a litigant does not need to have a formula to determine compensatory damages," and that Ocwen thinks "some sort of mathematical formula or specific, dollar-to-distress ratio" is required. (Response, pp. 12-13.) Ocwen made no such claim, nor does it think a "dollar-to-distress ratio" is needed. Instead, Ocwen argued that Mr.

Diedrich's testimony was vague and conclusory (just as it was in *Diedrich I*), and far from the "reasonably detailed explanation" that is required to take this case to trial. *Diedrich*, 2015 WL 1885630, at *8. The same holds true for Mrs. Diedrich's deposition testimony. No "formula" is needed – but something more than vague and conclusory statements *is* required. *Diedrich*, 2015 WL 1885630, at *8 (a party seeking emotional distress damages "must provide the court with a reasonably detailed explanation of the injuries suffered . . . [c]onclusory statements of stress are not sufficient.")

For example, at his deposition Mr. Diedrich testified that he did not know how he calculated the $50,000 in emotional distress damages other than "I know that it's just a burden on our lives every – every month not knowing where we're going with this thing. So, I mean, I don't recall how we came up with the [$50,000] . . ." (Ex. C, Daniel Depo., p. 28.) Mrs. Diedrich's testimony was equally vague and conclusory: "I guess I can't say exactly how I came up with that dollar amount, but taking into consideration all of the emotional distress that this has caused it's an amount that we found acceptable." (Ex. D, Natalie Depo., p. 20.) An "amount they found acceptable" is far from the "reasonably detailed explanation" that is required. *Diedrich*, 2015 WL 1885630, at *8.

Plaintiffs argue that "reasonable certainty, nor absolute certainty" is required to prove damages, and rely on *D.L. Anderson's Lakeside Leisure Co. v. Anderson*, 2007 WI App 269, ¶ 20, 306 Wis. 2d 470, 488, which is easily distinguishable. There, the lawsuit was brought by the buyers of a marine business against the seller claiming breach of a noncompete clause in an asset purchase agreement; the buyers presented evidence of lost profits, including sales data, which the appellate court held was sufficient to support the jury verdict in their favor. Plaintiffs also cite to *Hendrickson v. Cooper*, 589 F.3d 887, 892–93 (7th Cir. 2009), for the proposition that pain and

suffering "are very difficult to quantify," but *Cooper* involved claims brought by a crippled prisoner who was attacked by a prison guard which caused the plaintiff to suffer partial brain damage. *Cooper* is clearly inapposite, and Plaintiffs have made no claim for "pain and suffering" in any event.

Plaintiffs also claim that Ocwen is arguing that Mrs. Diedrich is "not able to claim damages" because she may have other areas of stress in her life. (Response, p. 13.) Ocwen made no such claim. Instead, Ocwen pointed out Mrs. Diedrich's testimony that she cannot rule out that other things in her life could be contributing to her alleged distress (for which she admittedly has not sought medical treatment). (Ex. D, Natalie Depo., p. 24.) Plaintiffs cite to a Florida case, *Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1212 (M.D. Fla. 2015), in support of their claim that they can recover emotional distress damages if other causes of stress are present. After citing a laundry list of cases in which the courts found that emotional distress testimony alone was insufficient to support a claim for actual damages (*see* 114 F. Supp. 3d at 1211-12), *Goodwin* ultimately found that the plaintiffs had provided credible testimony, but under circumstances far more extreme that that present here. Specifically, in that case, Bank of America filed a wrongful foreclosure action after refusing to recognize for two years that the borrowers were current on their bankruptcy payment plan and later were discharged in bankruptcy. Here, Plaintiffs have provided nothing but vague and conclusory testimony to support their request for damages, which they claim is simply the result of a lack of response by Ocwen to their purported QWR questioning the terms of their loan modification.

With regard to their request for damages relating to the increase in the monthly payment, Plaintiffs claim in their Response that Ocwen has an "utter disregard for RESPA regulations" by not making "appropriate corrections" to the monthly payment. (Response, p. 17.) As

4

Case 2:17-cv-01104-WED    Filed 02/21/20    Page 4 of 14    Document 59

demonstrated in Ocwen's Motion for Summary Judgment, there was nothing to correct with the higher payment, which was the result of the interest rate adjustment disclosed in their LMA. (ECF 46, pp. 19-21.) The LMA provides that the rate would adjust from 2% to 4.5% after five years, and that the terms and conditions of the Adjustable Rate Note they signed in February 2007 "remain in full force and effect" other than the terms that were modified under the LMA. (ECF 44-2, p. 3.) The Adjustable Rate Note clearly provided for changes in the monthly payment:

> 3. PAYMENTS
>
> . . .
>
> (C) Monthly Payment Changes
>
> Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
>
> . . .
>
> 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
>
> . . .
>
> (C) Calculation of Changes
>
> . . . The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owed at the Change Date in full on the Maturity Date at my new interest in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(ECF 44-2, p. 2.)

Accordingly, Plaintiffs should have *expected* the payment to increase. Certainly Plaintiffs cannot establish a causal connection between the increase in their monthly payment due to the disclosed rate adjustment and the lack of response to their alleged QWR.

5

Finally, conspicuously missing from Plaintiffs' Response is any discussion of the Wisconsin federal court decisions cited in Ocwen's Motion which granted summary judgment in favor of loan servicers on RESPA claims based on the rulings in *Diedrich I*. *See Moore v. Wells Fargo Home Mortg.*, No. 16-CV-656-WMC, 2018 WL 922370, at *1 (W.D. Wis. Feb. 15, 2018) (plaintiffs have not alleged any causal connection between the injury they allege, including the claim for emotional damages, and Wells Fargo's failure to respond to the QWR); *Lorang v. Ditech Fin. LLC*, No. 16-CV-425-JDP, 2017 WL 3891802 (W.D. Wis. Sept. 5, 2017) (even if plaintiffs could show a violation of RESPA "they failed to submit adequate evidence of injury to survive a motion for summary judgment"). Presumably, Plaintiffs ignore *Diedrich I*, *Moore* and *Lorang* because they support Ocwen's request for summary judgment in this case even if the Court finds a violation of RESPA. In fact, *Diedrich I* is directly on point and is dispositive of the claims in this case.

### B. Plaintiffs Have Provided No Evidence of a Pattern or Practice Entitling them to Statutory Damages.

Plaintiffs did not move for summary judgment regarding their request for statutory damages under RESPA based on any alleged "pattern or practice," and therefore it is waived as a matter of law. *Agropur MSI, LLC v. Sterling Tech., Inc.*, No. 15-CV-96-BBC, 2016 WL 1029563, at *2 (W.D. Wis. Mar. 15, 2016); citing *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (arguments not raised in summary judgment brief are waived). Even if the argument had not been waived, it still fails. Most tellingly, Plaintiffs assert in their Response that the "complaint sufficiently alleges a pattern or practice of noncompliance." (Response, p. 4.) While the Complaint may ***allege*** a pattern or practice, what matters on summary judgment is the ***evidence*** of a pattern or practice. Plaintiffs have none.

6

Case 2:17-cv-01104-WED   Filed 02/21/20   Page 6 of 14   Document 59

To show a pattern or practice, a plaintiff must show that noncompliance with the statute "was the company's standard operating procedure—the regular rather than the unusual practice." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720 (8th Cir. 2018), *reh'g denied* (May 29, 2018). The Seventh Circuit in *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017), held that the plaintiffs failed to produce evidence showing a pattern or practice of RESPA noncompliance and therefore had no viable claim for statutory damages. The court noted that the "best they [could] muster is a pair of district-court cases holding Chase liable for RESPA violations," and "[t]wo examples of similar behavior—in different states, separated by a handful of years, and with no evidence of coordination—isn't enough to support recovery of statutory damages." *Perron*, 845 F.3d at 857; *see also McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010) (two violations of Section 2605(e) insufficient to support a pattern or practice of noncompliance); *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (same).

Here, Plaintiffs have no evidence that it was Ocwen's "standard operating procedure" to not comply with Section 2605(e). *Wirtz*, 886 F.3d at 720. In their Response, Plaintiffs seek to offer the deposition testimony of an Ocwen witness in *Diedrich I* to establish a pattern or practice. However, as noted above, two violations of Section 2605(e) are insufficient to support a pattern or practice of noncompliance. *Perron*, 845 F.3d at 857; *McLean*, 595 F. Supp. 2d at 1365; *In re Maxwell*, 281 B.R. at 123.

Curiously, both of the cases cited by Plaintiff hold that two violations of RESPA are **insufficient** to support a finding of pattern or practice. The court in *In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002) found that "the Court is unpersuaded that the Debtor has established a 'pattern or practice' for purposes of RESPA's statutory damage provision by showing just two

7

violations." *In re Maxwell*, 281 B.R. at 123. Plaintiff also cite to *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), a Florida federal court case which also held that two violations of RESPA was insufficient to support proof of a pattern or practice of noncompliance as required by section 2605(f). Notably, the *McLean* court granted summary judgment in favor of GMAC Mortgage based on the plaintiffs' failure to produce sufficient evidence to support their claim that GMAC's failure to respond to the QWRs caused their alleged injuries. *McLean*, 595 F. Supp. 2d at 1374. Thus, the cases relied upon by Plaintiffs support Ocwen's position.

Plaintiffs also argue that the court in *Lindsay v. Rushmore Loan Mgmt., Servs., LLC*, No. PWG-15-1031, 2017 WL 1230822, at *10 (D. Md. Apr. 4, 2017) held that the plaintiffs pleaded a "pattern or practice" under RESPA with regarding to a loss mitigation application. The court made no such finding. To the contrary, the court noted that "Plaintiffs ***do not*** allege a pattern or practice of noncompliance with regard to the handling of the Qualified Request..." *Lindsay*, 2017 WL 1230822, at *4, *9 (emphasis added).[1]

> 1. **Plaintiff's Purported Evidence of Pattern or Practice is Based on Blatant Mischaracterizations Including the False Claim that *Diedrich I* Found That Ocwen "Did Not Try" to Comply with RESPA.**

In an attempt to establish a pattern or practice in this case, Plaintiffs falsely claim that the court in *Diedrich I* held that Ocwen "did not try" to comply with RESPA. (Response, p. 7.) The court made no such finding.

---

[1] Plaintiffs' citation to *Lindsay* is also curious because the court granted summary judgment in favor of the loan servicer based on the plaintiffs' failure to come forth with sufficient evidence of actual damages. *Lindsay*, 2017 WL 1230822, at *10, citing *Offiah v. Bank of Am., N.A.*, No. DKC 13-2261, 2014 WL 4295020, at *4 (D. Md. Aug. 29, 2014) ("Plaintiffs' conclusory assertion that they suffered 'anxiety, depression, and stress as a direct and proximate result of illegal conduct of [defendant] is insufficient to allege actual damages under RESPA"); *see also Ross v. FDIC*, 625 F.3d 808, 818 (4th Cir. 2010) (conclusory statements that the plaintiff suffered emotional distress do not support an award of compensatory damages).

Plaintiffs deposed a corporate representative in this matter, Sony Prudent ("Prudent"), and failed to question him on issues related to pattern and practice evidence. Given that they have no evidence of pattern or practice in this case, Plaintiffs spend considerable time discussing, and misrepresenting, the deposition testimony of Rashad Blanchard ("Blanchard"), the Ocwen corporate representative who was deposed in *Diedrich I*. First, Blanchard's deposition testimony should not be considered under Federal Rule of Civil Procedure 32(a)(8)[2] because the issues (or "subject matter") of Blanchard's testimony in that case involves a different purported QWR, and Ocwen's response thereto. Even if Blanchard's testimony is considered, it provides no support for Plaintiff's attempt to show a pattern or practice.

Plaintiffs claim that Blanchard's testimony establishes Ocwen has no procedure "at all" regarding responding to QWRs, which is a blatant misrepresentation given that Blanchard's cited testimony shows the process that is followed when Ocwen receives a QWR. (ECF 55, pp. 7-9.) Plaintiffs then falsely claim that "Ocwen's procedures have not improved" based on the corporate witness testimony in this case. (ECF 55, p. 8.) Not true.[3] Plaintiffs ignore that the alleged RESPA violation in *Diedrich I* was an inadequate response to their QWR (*i.e.*, the court

---

[2] Rule 32(a)(8) provides: **"**A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(8).

[3] Like Blanchard, Prudent testified about the process that is followed when responding to written requests for information. (ECF 44-10, Prudent Depo. Transcript, pp. 9-11.) For example, Mr. Prudent testified, in part, that once a written request is received, it is imaged into Ocwen's imaging system and a letter is sent notifying the borrower that Ocwen received the request. (ECF 44-10, Prudent Depo. Transcript, p. 9.) This is consistent with Blanchard's testimony. (ECF 43-2, Blanchard Depo. Transcript, p. 47.) Prudent also testified that the process is not automated; it is done by individuals. (ECF 44-10, Prudent Depo. Transcript, p. 9.) After the request is imaged, an associate in the research department begins working on the request, who will reach out to various business units to address the various concerns in the letter. (ECF 44-10, Prudent Depo. Transcript, p. 10.) This is also consistent with Blanchard's testimony. (ECF 43-2, Blanchard Depo. Transcript, p. 48.)

found Ocwen's response did not fully address the issues raised by the Diedrichs). Here, because the loan was in active litigation with Plaintiffs when Ocwen received the June 1, 2016 Letter, Ocwen's research department (which initially reviewed the Letter) confirmed with the litigation department that the litigation was still pending, did not refer to the letter as a QWR, and did not send the Letter to the litigation department for them to respond. (ECF 44-10, pp. 18-20.) Thus, no response was sent. (ECF 44-10, p. 19.)

With no evidence in this case to take to trial, Plaintiffs also cite to an action brought by the Consumer Financial Protection Bureau ("CFPB") against Ocwen which alleged that incomplete information was placed in its computer system to track loan information. (Response, p. 11.) The issues in the CFPB action have nothing to do with the issues or claims in this case.

Because Plaintiffs have no pattern or practice evidence to present at trial, summary judgment should be granted in Ocwen's favor regarding Plaintiffs' request for statutory damages under RESPA

## II.     The June 1, 2016 Letter Did Not Constitute a QWR.

The above assumes, however, that Plaintiffs' June 1, 2016 Letter ("Letter") was a qualified written request ("QWR"). It was not, because it did not relate to the "servicing" of a loan as that term is defined by the statute. (ECF 46, pp. 8-10.) Instead, the purported QWR included grievances about the terms of the LMA that they agreed to five years earlier (and now regret signing), and whether the terms would change in the future. (ECF 1, Ex. A.)

These inquiries (or personal opinions, calculations and grievances) do not seek information relating to Ocwen's "servicing" of the Loan as defined by RESPA, *i.e.*, receiving scheduled periodic payments from a borrower pursuant to the terms of a loan, including amounts for escrow accounts, and making the payments of principal and interest and such other payments

10

Case 2:17-cv-01104-WED   Filed 02/21/20   Page 10 of 14   Document 59

with respect to the amounts received from a borrower as may be required pursuant to the terms of the loan. 12 U.S.C.A. § 2605(i)(3). Instead, Plaintiffs appeared to be challenging the terms of the LMA that they signed, which they are clearly not happy with seven years later. These inquiries (better labeled as grievances about the LMA that they signed in 2011) do not constitute a "qualified written request" under RESPA.

The cases cited by Plaintiffs[4] regarding what is considered a QWR are distinguishable based on one simple fact: none of the letters are based on grievances, personal opinions, lengthy calculations regarding what a borrower thinks a payment should be, and their unhappiness with a loan modification that they now regret signing.

### III. Claim Preclusion Applies to Issues Regarding Plaintiffs' Monthly Loan Payment Since Those Issues Could Have Been Raised in Diedrich I.

Plaintiffs argue that claim preclusion "cannot possibly bar a claim that came into existence three years after the prior suit was filed." (Response, p. 14.) This is incorrect. One of Plaintiffs' main complaints in this case is that their monthly payment under the LMA improperly increased when the interest rate increased to 4.50%. (ECF 1, ¶ 14.) Plaintiffs could have raised any issues regarding their monthly payment under the LMA in *Diedrich I*, especially considering that the claims in that case were based on the same LMA. Under the doctrine of claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which ***might have been litigated*** in the former proceedings." *Wisconsin Pub. Serv. Corp. v. Arby Const., Inc.*, 2011 WI App 65, ¶¶ 14-15, 333 Wis. 2d 184, 192–93, *aff'd*, 2012 WI 87, ¶¶ 14-15, 342 Wis. 2d 544 (emphasis added).

---

[4] *Kralovic v. JP Morgan Chase Bank, N.A.*, No. 1:14 CV 758, 2015 WL 252315, at *4 (N.D. Ohio Jan. 20, 2015); *Arriaga v. Wells Fargo Bank, N.A.*, No. 09 CV 2115, 2013 WL 1303831, at *4 (N.D. Ill. Mar. 27, 2013); *Thomas v. EMC Mortg. Corp.*, No. 4:10-CV-861-A, 2011 WL 5880988, at *9 (N.D. Tex. Nov. 23, 2011); *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1162 (M.D. Ala. 1999)

11

Plaintiffs claim that it "was not until the payment was increased on July 1, 2016 that the Diedrichs had actually suffered damages." (Response, p. 14.) This argument, of course, misses the point. The payment increase in July 2016 did occur *as a result of* a non-response to their purported QWR. It occurred as a result of the scheduled interest rate adjustment coming into effect. That adjustment was disclosed in the LMA, which they signed prior to *Diedrich I*. Thus, the issue regarding the monthly payment ***might have been litigated*** in *Diedrich I*. As the court noted in *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 28, 281 Wis. 2d 448, 470–71, 699 N.W.2d 54, 65, the key objectives of claim preclusion are to promote judicial economy and to "conserve the resources the parties would expend in repeated and needless litigation of issues that were, or that might have been resolved in a single prior action." *Mrozek*, 2005 WI 73, ¶ 28. The court further noted that "[a]t some point, litigation over a controversy must come to an end." *Id*. Plaintiffs have been involved in litigation with Ocwen for ***seven years*** relating to issues concerning the LMA that they clearly regret signing. Because any claim related to the monthly payment adjustment was available to Plaintiffs to assert in *Diedrich I*, claim preclusion applies. *Arby Const., Inc.*, 2011 WI App 65, ¶¶ 14-15.

**IV.     Summary Judgment Should Be Granted in Ocwen's Favor on the State Law Claims.**

    **A.     Ocwen Did Not Violate Section 138.052(7).**

Section 138.052(7) provides that "Interest imposed on the amount due after acceleration or maturity of a loan may not exceed the contract rate." *Diedrich,* 839 F.3d at 587; Wis Stats. §§ 138.052(7). Here, the loan was not accelerated, nor did it mature. Instead, the LMA clearly provides that the interest rate would adjust from 2% to 4.50% after five years, which is exactly what happened. Plaintiffs argue that Ocwen can still be liable under Section 138.052(7) because the interest rate was increased a month early. (Response, 16.) Even if that happened Plaintiffs

12

have provided no evidence that the monthly payment increased a month early. Moreover, the loan did not mature or accelerate, and therefore Section 138.052(7) does not apply.

B. **The Section 224.77 Claims Fail if the RESPA Claims Fail.**

Plaintiffs claim that Ocwen violated Section 224.77(1)(k), (l) and (m) of the Wisconsin Statutes by failing to provide a timely answer to their inquiries. (ECF 1, pp. 6-7.); Wis. Stat. Ann. § 224.77(1)(k)–(m). Plaintiffs' Response ignores the Seventh Circuit's ruling in *Diedrich I* that Section 224.77(1) points back to the alleged RESPA violation and a claim under Section 224.77 "goes down with the federal claim's ship" for the same reason the RESPA claims failed – that Plaintiffs failed to meet their burden of setting forth sufficient evidence to overcome a motion for summary judgment. *Diedrich*, 839 F.3d at 594. This Court should follow *Diedrich I* and enter summary judgment in Ocwen's favor on the Section 224.77 claim.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, and in its Motion for Summary Judgment and Brief in Support, Ocwen respectfully requests that summary judgment be granted in its favor and against Plaintiffs on all claims in the Complaint, that the Complaint be dismissed with prejudice, and that the Court any further relief that it deems just and proper.

Dated: February 21, 2020  Respectfully submitted,

*/s/ Robert W. Brunner*
Jena M. Valdetero (IL #6290948)
Robert W. Brunner (IL #6203884)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
jena.valdetero@bclplaw.com
robert.brunner@bclplaw.com
*Attorneys for Ocwen Loan Servicing, LLC*

13

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 21, 2020, the foregoing document was electronically filed and served via the Court's CM/ECF system on all counsel of record.

*/s/ Robert W. Brunner*
Robert W. Brunner
